## JONATHAN M. SMITH & others *vs.* INHABITANTS OF DEDHAM & others.

Norfolk. Jan. 26. — Feb. 28, 1887. C. ALLEN & HOLMES, JJ.,
absent.

The selectmen of a town, under a vote of the town authorizing it to do so, made a contract with a water company for three years, at a certain rate a year, for the service of a certain number of hydrants. At the expiration of the three years, a town meeting was duly called to consider an article in the warrant, to see what action the town would take with reference to a supply of water for fire and other service. Under this article, it was voted " that the selectmen be authorized to renew the contract for ten years with the " water company at a reduced rate per year. *Held*, that the contract authorized by the vote did not come within the provisions of the Pub. Sts. *c.* 27, § 27; and that, by the vote, the town did not incur a debt, within the meaning of the Pub. Sts. *c.* 29, § 1.

The Pub. Sts. *c.* 110, §§ 15, 16, authorizing a city or town in which an aqueduct is situated to put conductors into the pipes for the purpose of drawing water therefrom in case of fires, and empowering the selectmen to make provisions for taking water for protection against fire, have no application to a water company whose charter does not confer a similar power upon the town in which it is situated, or upon the selectmen.

GARDNER, J. At a town meeting of Dedham, held in 1883, the town authorized its selectmen to make a contract with the Dedham Water Company for three years, at the rate of $5000 per year, for the service of one hundred hydrants, the company agreeing to give, free of charge, the supply of water to public buildings, water troughs, and cemeteries. The selectmen made the contract. A town meeting was duly called on August 30, 1886, to consider, among other things, an article in the warrant, to see what action the town would take with reference to a supply of water for fire and other service. Under this article, it was voted " that the selectmen be authorized to renew the

contract for ten years with the Dedham Water Company at the rate of $4500 per year." At the meeting at which the vote was passed, the check list was not used, nor did two thirds of the voters present and voting vote to authorize the contract to be made. The petitioners seek by this petition, under the Pub. Sts. c. 27, § 129, to restrain the town and its officers from making the contract, and from carrying it into effect.

1. The petitioners contend that the vote of the town does not comply with the Pub. Sts. c. 27, § 27, which provide that "a town, with the consent of a majority of its selectmen, ratified by a majority of its voters, present and voting thereon at a legal meeting, at which the check-list shall be used, may, for the purpose of supplying water to its inhabitants, purchase of any municipal or other corporation the right to take water from any of its sources of supply or from pipes leading therefrom," or may purchase its water rights, estates, franchises, and privileges, "or may make a contract therewith for a supply of water." The following sections provide for issuing bonds in case of purchase. These sections relate to supplying the inhabitants of a town with water, which does not come within the corporate powers of towns, and must be done by authority of statute. Under it, towns can supply water to their inhabitants for all purposes, mechanical, fire, and domestic, in the manner pointed out by the statute. To supply water to the inhabitants of a town means water for all uses for which it may legally be supplied, and not necessarily for the purpose of extinguishing fires. This statute makes provisions for purchasing rights to supply pure water to the inhabitants, for which the town may issue bonds in payment, redeemable in twenty years. The contract to which it refers is a contract for the supply of water, for all uses, to the inhabitants of a town, and was not intended to interfere with the corporate power of cities and towns to procure water for fire purposes. It contemplated supplying water upon a much larger scale, which was beyond the corporate power of cities and towns, and which required the enactment of laws to enable them to carry it out. The contract which the town of Dedham authorized its selectmen to make with the Dedham Water Company does not come within any of the provisions of this section.

2. It is also argued that the vote of the town is in violation of the Pub. Sts. *c.* 29, §§ 1, 6, 7, which provide as follows: " Cities and towns shall not incur debts except in the manner of voting, and within the limitations as to amount and time of payment, prescribed in this chapter." § 1. " Cities and towns may by ordinary vote incur debts for temporary loans in anticipation of the taxes of the year in which such debts are incurred, and of the year next ensuing, and expressly made payable therefrom by vote of the city or town." § 6. " Other debts than those mentioned in the preceding section shall be incurred only by a vote of two thirds of the voters present and voting at a town meeting." § 7.

Chapter 29 of the Public Statutes is entitled " Of municipal indebtedness." Its obvious purpose is to protect cities and towns from the creation of municipal debts without proper provision for payment, and to prevent improvident and reckless expenditures of public money as a natural consequence of debts so contracted. *Agawam Bank* v. *South Hadley*, 128 Mass. 503. That it was not intended to apply to all debts contracted by a city or town is apparent from § 16, which provides that " the restrictions of the preceding sections shall not exempt a city or town from its liability to pay debts contracted for purposes for which it may lawfully expend money." The statute deprived cities and towns of the power to contract debts for borrowed money, which it was generally supposed they had previously possessed, and gave them a limited power, which could be exercised only in the way pointed out. But, although the statute was prohibitory with reference to the borrowing of money and the contracting of debts, it was not intended to interfere with the limited corporate powers and duties of cities and towns. The statutes empower them to levy taxes and appropriate money for the corporate necessities of the town or city. They are authorized to make contracts necessary and convenient for the exercise of their corporate powers, without bringing themselves within the limitation of this statute. Towns may, at legal meetings, grant and vote sums of money as they judge necessary for the several purposes enumerated, " and for all other necessary charges arising in such town." Pub. Sts. *c.* 27, § 10. They have power to levy taxes, so far as " may be necessary to enable them to exercise

the powers, enjoy the privileges, and perform the duties, established by law." *Willard* v. *Newburyport*, 12 Pick. 227. The proper necessary town charges must have a reasonable limitation. *Stetson* v. *Kempton*, 13 Mass. 272. If the expenditure be in the furtherance of some duty enjoined by statute, or in exoneration of the citizens of the town from the liability to a common burden made in reference to it, it will be valid and binding on the town. The prevention of fire is one of those objects affecting the interests of the inhabitants generally, and clearly within the scope of municipal authority. *Allen* v. *Taunton*, 19 Pick. 485.

In *Hardy* v. *Waltham*, 3 Met. 163, it was held that towns in their corporate capacity, having power to provide for the purchase and maintenance of fire-engines for the extinguishment of fires, must have the incidental power to make provision, by reservoirs or other means, for a supply of water, without which the engines would be useless. It is clear that the town of Dedham could legally make provision for a supply of water to the town for fire purposes. Having this power, the first fifteen sections of the Pub. Sts. *c.* 29, would not exempt it from its liability to pay debts contracted for the supply of water to the town for fire purposes, as this was an object for which the town could lawfully expend money.

The contract which the selectmen are authorized to make is one which we assume is for a sum of money to be paid annually, among the other current expenses of the town. The payments are to be made out of the moneys annually granted by the town and raised by taxation. It is, in effect, a cash transaction, where the payments are made *pari passu* with the accumulation of the yearly service which determines the amount to be paid. *Grant* v. *Davenport*, 36 Iowa, 396. It is like the other ordinary expenses of the town, within the limit of its annual current expenses. The town of Dedham by its vote did not incur a debt, within the fair meaning of the Pub. Sts. *c.* 29, § 1.

A majority of the court are of opinion that the statute was not intended to apply to contracts made for the current expenses of the town, and payable out of the current revenues of the several years in which the Dedham Water Company is to furnish water to the town. *Laycock* v. *Baton Rouge*, 35 La. An. 475.

3. The Pub. Sts. *c.* 110, relating to " aqueduct corporations," which in § 15 authorize a city or town in which such aqueduct is situated to put conductors into the pipes for the purpose of drawing water therefrom in case of fires, and which in § 16 empower the selectmen to make provisions for taking water for protection against fire, have no application to the Dedham Water Company. The charter of this company (St. 1876, *c.* 138) does not confer any similar power 'upon the town of Dedham, or upon its selectmen. *Decree dismissing the petition affirmed.*

*T. H. Talbot & E. Greenhood,* for the petitioners.

*G. F. Williams,* for the respondents.

*J. R. Bullard,* for the Dedham Water Company, was permitted to file a brief.