Joseph L. Kiichli *vs.* Minnesota Brush Electric Co. *et al.*

Submitted on briefs July 16, 1894. Affirmed, July 26, 1894.

No. 8846.

**Municipal contract for a term of five years.**

*Held,* a contract made by the city council of the city of Minneapolis for lighting the streets of that city for a term of five years is, under the charter of that city, void, unless the funds on hand and the taxes actually levied when the contract was made were sufficient to cover all the liability incurred by the contract, and payable during the five years, and also to cover the current expenses and other existing liabilities of the fiscal year for which such taxes were levied.

**Validity not presumed.**

*Held,* further, the conditions required to make the contract valid are so exceptional that its validity will not be presumed.

Appeal by defendant, Minnesota Brush Electric Company, from an order of the District Court of Hennepin County, *Seagrave Smith, Henry G. Hicks,* and *Charles B. Elliott,* JJ., made March 8, 1894, overruling its demurrer to the complaint.

The plaintiff, Joseph L. Kiichli by his complaint states that he is a resident freeholder and taxpayer of Minneapolis and brings the action in his own behalf as well as in behalf of all other taxpayers similarly situated. The defendants are Minnesota Brush Electric Company, City of Minneapolis, William H. Eustis, Mayor, A. C. Haugan, Treasurer, and Wallace G. Nye, Comptroller. The complaint states that on August 6, 1892, the city made a contract with the Minnesota Brush Electric Company, by which it agreed to light the streets by electric lights for five years from and after January 1, 1893, and the city agreed to pay for 120 lamps in the central district burning all night and every night in the year at $150 per lamp per year and for 480 electric lamps in outer districts on moonlight schedule at $125 per lamp per year, payable monthly at the end of each month. The complaint further states that the prices are exorbitant and at least $60 per lamp per year higher than the necessary and reasonable cost and value thereof, that the contract is against public policy, illegal and void, yet the mayor, treasurer and

comptroller are paying the money of the city thereon monthly although power so to do is not conferred by the city charter.    Plaintiff prayed that the contract be adjudged illegal and that the city officers be enjoined from further performance thereof, and for such other relief as should seem to the court equitable in the premises.

The Minnesota Brush Electric Company demurred to this complaint on the ground that it does not state facts sufficient to constitute a cause of action.    The questions thereby raised were argued January 20, 1894, before three of the Judges *in banc* and an order was subsequently made overruling the demurrer.    From that order it appeals.

*Hahn & Hawley,* for appellant.

The contract is not against public policy.    Five years is not an unreasonable time.    That a long time contract is legal and valid is well established. *New Orleans Gas Light Co.* v. *City of New Orleans,* 42 La. An. 188; *City of Newport* v. *Newport Light Co.,* 84 Ky. 166; *Capitol City Water Co.* v. *Montgomery,* 92 Ala. 366; *City of East St. Louis* v. *East St. Louis G. L. & C. Co.,* 98 Ill. 415; *City of Valparaiso* v. *Gardner,* 97 Ind. 1; *Indianapolis* v. *Gas Light Co.,* 66 Ind. 396; *City of Vincennes* v. *Citizens' Gas Light Co.,* 132 Ind. 114; *Smith* v. *Dedham,* 144 Mass. 177; *Grant* v. *City of Davenport,* 36 Ia. 396; *Merrill Ry. & L. Co.* v *City of Merrill,* 80 Wis. 358; *Western Sav. Fund Society* v. *Philadelphia,* 31 Pa. St. 175; *Saginaw Gas Light Co.* v. *City of Saginaw,* 28 Fed. Rep. 529; *Columbus Water Works Co.* v. *City of Columbus,* 48 Kan. 99; *Crowder* v. *Town of Sullivan,* 128 Ind. 486; *Rockebrandt* v. *City of Madison,* 9 Ind. App. 227; *Santa Anna Water Co.* v. *Town of San Buenaventura,* 56 Fed. Rep. 339.

The city charter, Sp. Laws 1881, ch. 76, subch. 5, § 15, does not limit the power given the city council on this subject by the other sections in the charter, nor can it be construed as rendering the contract in question *ultra vires,* because it does not apply and was not intended to apply to current expenses.    This contract does not create a debt or liability within the meaning of the prohibition.    No such debt or liability as is contemplated by this section can arise under this contract.    This contract is within the exception "special authority of law."    *Tatham's Appeal,* 80 Pa. St. 465.

The contract created no debt or liability within the meaning of this section. *Laycock* v. *Baton Rouge*, 35 La. An. 475; *Weston* v. *City of Syracuse*, 17 N. Y. 110; *Appeal of City of Erie*, 91 Pa. St. 398; *Atlantic City Water Works Co.* v. *Read*, 50 N. J. Law 665; *State* v. *McCauley*, 15 Cal. 430; *City of East St. Louis* v. *East St. Louis G. L. & C. Co.*, 98 Ill. 415; *Budd* v. *Budd*, 59 Fed. Rep. 735; *Garrison* v. *Howe*, 17 N. Y. 458.

No such debt or liability as is contemplated by this section can arise under this contract. *City of Conyers* v. *Kirk*, 78 Ga. 480.

The complaint does not state the amount of revenue actually levied by the city at the time the contract was entered into, and in fact does not state whether any amount whatever had been levied or not at that time, nor does it state what amount, if any, of the revenue levied was, at the time the contract was entered into, applicable to the payment of the liability created by the contract.

The complaint does not show that the debt or liability, if any, created by the contract, exceeded the amount of revenue actually levied and applicable to the payment thereof at the time the contract was made.

*David F. Simpson*, for respondent.

The point that this contract is not against public policy, is not essential to the determination of this case. In passing it, however, we would call attention to the fact that while as yet it can be fairly said that the courts have adopted no rule limiting the right of a city council in the absence of restrictions in the city charter, to enter into contracts for a term of years extending beyond the life of the council itself, they have in numbers of cases stated that the contract must be for a reasonable term. Before the law in reference to time contracts of municipalities can be settled on lines sufficiently definite to form a safe rule for municipal action, the courts must adopt some rule for the judging of these contracts more definite than that of the reasonableness of the time. Under this rule to justify a time contract it would be necessary to show affirmatively that the making of a time contract was essential to the proper administration of the affairs of the municipality. Without this showing a time contract extending beyond the term for which the

governing body were elected to govern would be *ultra vires*. *Garrison* v. *City of Chicago*, 7 Biss. 480.

The city council did not have authority or power to enter into the contract in question because it created a debt or liability against the city in excess of the amount of revenue actually levied and applicable to the payment of such liability. Sp. Laws 1881, ch. 76, subch. 5, § 15.

This section not only applies to the question of bonds but applies to every contract which can be entered into by the city that will create a liability for any fiscal year prior to the annual levying of the tax for that year unless there is in the charter an express authority to create such liability for a term of years. It applies to the subsequent sections 16 and 17 in regard to permanent improvements as well as to all the sections that precede it. This clause alone has prevented the creation of floating and bonded indebtedness by the City of Minneapolis, has forced City Councils to do business, not only in the matter of issuance of bonds but in the matter of current expenses, permanent improvements, buying supplies and all other of the city's departments, on a practically cash basis. To limit its scope solely to the matter of issuance of bonds would be to take out of the city charter every safeguard against improvident expenditures.

Cases are in point here which pass upon prohibitions against municipal indebtedness or construe statutes which in one form of language or another prohibit the creation of liability prior to the actual levy of the funds to meet the same. This is the question at issue here. We think the courts have uniformly given provisions of this class the construction for which we contend. *Tennant* v. *Crocker,* 85 Mich. 328; *Humphreys* v. *City of Bayonne,* 55 N. J. Law 241; *Richmond Co. Gas Co.* v. *Middletown,* 59 N. Y. 228; *Atlantic City Water Works* v. *Read,* 50 N. J. Law 665; *City of Springfield* v. *Edwards,* 84 Ill. 626; *Culbertson* v. *City of Fulton,* 127 Ill. 30; *Garrison* v. *City of Chicago,* 7 Biss. 480; *McElhinney* v. *Superior,* 32 Neb. 744; *Jonas* v. *Cincinnati,* 18 Ohio 318; *Bladen* v. *Philadelphia,* 60 Pa. St. 464; *Blair* v. *Lantry,* 21 Neb. 247; *Niles Water Co.* v. *City of Niles,* 59 Mich. 311; *Baltimore* v. *Gill,* 31 Md. 375; *Mahon* v. *Columbus,* 58 Miss. 310; *French* v. *Burlington,* 42 Ia. 614; *Wallace*

v. *San Jose*, 29 Cal. 181; *People* v. *Pacheco*, 27 Cal. 176; *State* v. *Medbery*, 7 Ohio St. 522; *Salem Water Co.* v. *City of Salem*, 5 Oregon 29.

CANTY, J.    Plaintiff brought this action against the Brush Electric Light Company and the city of Minneapolis and certain of its officers. He alleges in his complaint that he is a resident and taxpayer of said city; that on August 6, 1892, the city and the electric company entered into a pretended contract whereby the company agreed to provide certain lamps and electric light service to be used in lighting the streets, and whereby the city agreed to pay for the same at certain specified rates, the contract to continue for the period of five years from and after January 1, 1893; that both parties have since been acting under and performing said contract, and that the city is paying for such service much more than it is worth, and threatens to, and if not restrained will, continue to perform such contract during the balance of said five years, and will pay out for such service during said time at least $200,000 more than the reasonable cost and expense thereof,—and prays that an injunction issue, restraining the further payment of any public funds upon said contract.

The electric company appeals from an order overruling its demurrer to this complaint on the ground that it does not state a cause of action.    In overruling the demurrer the court below held that the city has no power, under its charter, to make a contract for five years for lighting the streets.

The charter, Sp. Laws 1881, ch. 76, Subch. 1, § 1, provides that the city "shall be capable of contracting and being contracted with; and shall have all the general powers possessed by municipal corporations at common law."

Subch. 4, § 5, subd. 11, gives the city power "to erect lamps and provide for lighting the city   *   *   *   and to create, alter and extend lamp districts."

Subch. 5, § 7, as amended by Sp. Laws 1887, ch. 15, § 16, provides that the fiscal year shall commence on the 1st day of January in each year.

The general statute provides that the state board of equalization shall meet on the first Tuesday in September of each year to equalize the assessments in the different counties, cities, etc.

Subch. 5, § 8, of said charter provides that when such board shall have completed its adjustment of the assessment of the taxable property in said city, the city comptroller shall report to the city council a computation of a rate of tax levy which with the amount of revenue received by the city for the last year reported as aforesaid and applicable to the current expenses of the city, shall be sufficient to defray the current expenses of the city for the next fiscal year.

Section 10 of Subch. 5, as amended by Sp. Laws 1887, ch. 15, § 4, reads as follows:

"Sec. 10. After the making of the reports of the city comptroller, provided for in section eight (8) hereof, the city council shall levy such tax on all the taxable property in said city as it shall deem necessary, in addition to the other revenue of the city applicable thereto, to defray the current expenses of the city for the next fiscal year, but no such taxes for such current expenses shall in any year amount to more than six-tenths ($^6/_{10}$) of one per cent. of the assessed valuation. Prior to the levying such tax to defray the current expenses of the city for the next fiscal year, said city council shall, by resolution appropriate a certain sum of money for the expenses of each department of the city government, which is to be paid out of said current expenses fund, and no more money than thus appropriated shall be expended for any fiscal year for any such department of the city government.

Section 11 of subch. 5, as amended by Sp. Laws 1889, ch. 33, § 4, reads as follows:

"Sec. 11. The city comptroller shall, as soon as may be after the first (1st) Monday in January of each year, make report to the city council of the actual expenses of the city for the first quarter of the then current fiscal year, the amount of taxes collected and outstanding and of the revenues received from other sources, and if, upon the making of such report, it shall appear that the current expenses for such quarter have exceeded the estimates upon which the tax levy therefor was based, or that the revenues of said city are likely to fall short of their estimated amount at the time of making such tax levy, the city council shall forthwith proceed to reduce the current expenses of said city in such manner as may be deemed advisable, and for that purpose may diminish the amount of service for lighting streets, reduce the force or number of men employed in the several depart-

ments of the city, except the fire department, but in the discharge of such employees, said city council so far as may be, shall provide that such discharge shall be operative only during the summer months of the year. In all future contracts for lighting streets the right of the city to reduce the amount of the service on account of deficiency of revenue shall be reserved."

Sections 13 and 14 provide for the payment of interest on the bonded indebtedness and the creation of a sinking fund.

Section 15 of this Subchapter 5 provides that bonds shall be paid out of this sinking fund as they mature, and, if there is not sufficient of that fund to pay the same, empowers the city council to issue new bonds to such an amount as may be necessary to meet the deficiency. It then provides: "But neither said city council nor any officer or officers of said city shall otherwise without special authority of law, have authority to issue any bonds, or create any *debt or any liabilities against said city in excess of the amount of revenue actually levied and applicable to the payment of such liabilities.*"

All of said sections, from 7 to 15, in said subchapter 5, relate to the finances of the city; are connected, and to be read together. It seems to be a carefully devised scheme to compel the city to ascertain with reasonable care, in advance of the tax levy, what the income will be, and to live within that income. It clearly prohibits the anticipating of any future revenue, except that for which the tax is actually levied at the time the liability is incurred. It is unnecessary to notice, step by step, the limitations to be found in these sections. They constitute a system of checks and limitations on the creation of debt and the incurring of liability, which wind up by depriving the city council of the power, "without special authority of law," to "create any debt or any liabilities against said city, in excess of the amount of revenue actually levied and applicable to the payment of such liabilities."

It is urged that making a contract this year, to be performed in part this year, in part next year, and in part the year after, and paid for only as performed, is not incurring liability at the time the contract is made, as the tax will be levied before the debt is created; that is, before the liability matures. To this it may be answered that a liability is incurred when the contract is made. The point here involved is disposed of in the cases of *Johnston* v. *Board of Com'rs*

*Becker Co.*, 27 Minn. 64, (6 N. W. 411,) and *Rogers* v. *La Sueur Co.*, 57 Minn. 434, (59 N. W. 488,) where the court held that a liability was incurred when the contract was made, though not to be performed, or the performance paid for, until after the taxes of subsequent years would be available to pay it. There the county commissioners were limited in incurring liability to the maximum amount which could be levied in one year according to the tax lists then on file. Here the limitation is more stringent. It limits the city council, in incurring liability, to the amount of the tax "actually levied" at the time the liability is incurred.

It is true that there is at the end of said section 11 the following clause: "In all future contracts for lighting the streets the right of the city to reduce the amount of the service on account of the deficiency of revenue shall be reserved." If this provision stood alone, it would be entitled to considerable weight, as implying a right to make such time contracts for street lighting; but it does not stand alone, and, in the connection in which it is used, cannot be so interpreted.

Section 10 provides for limiting absolutely, before the tax levy, the expense of each department for the next fiscal year. Section 11 provides for contracting this limit still more, after the first quarter, "if the current expenses for that quarter have exceeded the estimates upon which the tax levy therefor was based," and provides for cutting down expenses in different ways, including the diminishing of the light service. Then follows the clause above quoted. This clause follows a limitation upon a limitation, for the purpose of giving effect to those limitations, and cannot be held, in such a connection, to give by implication the right to make such time contracts. Besides, section 15 prohibits the making of any contract, whereby liability is incurred, exceeding the revenues of the fiscal year, "without special authority of law." Mere implied authority is not sufficient.

The conclusion arrived at is further strengthened by a consideration of other provisions of the charter. Thus, subch. 4, § 5, subd. 44, empowers the city council to make five-year contracts for the removal of garbage; and contracts for three years for street sprinkling are permitted by subch. 8, § 17.

The complaint nowhere alleges what funds were or were not ap-

plicable to the payment of the liability incurred by this contract at the time the contract was made. The complaint does not state what funds were then on hand, or what amount of tax was then levied, or what amount of funds would be realized from other sources, or what the total amount of all such funds would be for that fiscal year, applicable to such liability. For this reason it is urged by appellant that the complaint does not state a cause of action. We cannot agree with counsel. The charter specifies a number of purposes for which revenue shall be raised. The only other power given to the city council to raise revenue is to levy such tax as it shall deem necessary, with the other sources of revenue, to meet the current expenses of the next fiscal year. Under these provisions it would be a violation of the duty of the city authorities to levy a tax this year to be applied to the payment of the current expenses of two, three or four years to come. Neither would they be justified in setting aside funds now on hand to be applied in payment of such current expenses for such years to come, and then proceeding to levy a tax to meet next year's current expenses, to which the funds on hand should be applied.

It seems to us that we cannot hold this contract valid on its face unless we can presume that the funds on hand, and the taxes actually levied, when the contract was made, were sufficient to cover all the liability incurred by this contract (payable during the next five years), and also to cover the current expenses and other existing liabilities of the fiscal year for which such taxes were levied. We are of the opinion that under the limitations on raising and accumulating revenue, both express and implied, in this charter, we cannot make this presumption.

The order appealed from should be affirmed. So ordered.

Buck, J., absent, sick, took no part.

(Opinion published 59 N. W. 1088.)