CHARLES H. ANDERSON, Relator, v. INTERNATIONAL SCHOOL DISTRICT NO. 5, Portal Township, Burke County, North Dakota, a Municipal Corporation, et al.

(156 N. W. 54.)

**State Constitution — corporation debts — school districts — assessed valuation — property — executory contracts — public improvements.**

1. The purpose of § 183 of our state Constitution in limiting the debt of certain municipalities, including school districts, to 5 per cent upon the assessed valuation of the taxable property therein, is to prevent such municipalities from improvidently contracting debts for other than ordinary current expenses of administration, and to restrict their borrowing capacity; and the word "debt," as therein employed, should receive a broad meaning so as to cover liabilities created under executory contracts for public improvements, although nothing is due thereunder until the same are executed in part or in whole.

**Contract — schoolhouse — architect — heating — ventilation.**

2. Defendant school district, whose debt limit was about $16,000, entered into a contract on May 27, 1913, with defendant Bartelson for the erection of a schoolhouse at the agreed price of $24,000. Eighty-five per cent of the labor and materials furnished was payable monthly upon estimates of the architect, and the balance within a short time after the completion of the building, which was to be completed on or before October 15, 1913. It also in July and August, 1913, entered into two other contracts, one for heating and ventilating the building, and the other for lighting the same, which contracts called for the payment of $3,679 and $599.95, respectively, at the completion thereof.

*Held,* that these contracts created a present debt against the district at the date they were entered into, which debt, after deducting available funds in the treasury applicable to the payment thereof, greatly exceeded the constitutional debt limit; and to the extent of such excess the contracts are void, and further payments thereon are enjoined.

**Debt limit — constitutional — funds — school district liability — taxes — anticipated revenues — future years.**

3. In ascertaining whether the constitutional limit has been exceeded, funds in the treasury available for meeting the district's liabilities may be considered, also taxes levied and uncollected; but the district officers have no right to anticipate revenues to be derived from tax levies to be made in future years.

**Contracts — public officers — liability — incurring — constitutional debt limit.**

4. Section 2218, Compiled Laws 1913, construed, and held not to authorize the making of the contracts in question. The evident purpose of that statute

was to limit public officers from incurring liabilities (within the constitutional debt limit) to such sum as may be liquidated during the current or subsequent. years out of the revenues which may be raised within the maximum tax rate permitted by law. It does not purport to, nor could it legally, authorize the incurring of liabilities exceeding the constitutional debt limit.

Opinion filed November 24, 1915.  Rehearing denied January 15, 1916.

Appeal from the District Court, Burke County; *Leighton,* J.  From a judgment in defendants' favor, plaintiff appeals.

Reversed.

*Charles D. Kelso* and *Francis J. Murphy,* for appellant.

As soon as an indebtedness is greater than the constitutional limit of 5 per cent, the law is violated, even though it may be but for the moment.  Birkholz v. Dinnie, 6 N. D. 511, 72 N. W. 931.

At the time the contract was signed it became obligatory on both parties, and the indebtedness was incurred.  Crogster v. Bayfield County, 99 Wis. 1, 74 N. W. 635, 77 N. W. 167; Kiichli v. Minnesota. Brush Electric Co. 58 Minn. 418, 49 Am. St. Rep. 523, 59 N. W. 1088; Levy v. McClellan, 196 N. Y. 178, 89 N. E. 569.

It is the policy of the law to restrict the expenditures, by fixing a limit to the amount which can be lawfully collected from the taxpayers of the district, for school purposes in any one year.  Farmers' & M. Nat. Bank v. School Dist. 6 Dak. 255, 42 N. W. 767; Stern v. Fargo,. 18 N. D. 289, 26 L.R.A.(N.S.) 665, 122 N. W. 403; Kane v. School Dist. 52 Wis. 502, 9 N. W. 459.

Such limit cannot be exceeded in any one year.  Birkholz v. Dinnie; Crogster v. Bayfield County; Kiichli v. Minnesota Brush Electric Co.; Levy v. McClellan; Farmers' & M. Nat. Bank v. School Dist. and Stern v. Fargo, supra.

The appropriation should be made prior to the incurring of the expense.  Engstad v. Dinnie, 8 N. D. 1, 76 N. W. 292; Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726; Pryor v. Kansas City, 153 Mo. 135, 54 S. W. 499.

Anticipated levies or taxes cannot be considered.  Zimmerman v. State, 60 Neb. 633, 83 N. W. 919; Scott v. Armstrong School Directors, 103 Wis. 280, 79 N. W. 239.

Funds appropriated or levied for any specific purpose cannot be diverted for other purposes.  N. D. Const. § 130; State ex rel. Ahern v. Walsh, 31 Neb. 469, 48 N. W. 263; Drew v. School Twp. 146 Iowa,

721, 125 N. W. 815; Schouweiler v. Allen, 17 N. D. 510, 117 N. W. 866.

It is no defense that the building is accepted and the municipality is using it, if the debt limit has been exceeded.   Superior Mfg. Co. v. School Dist. 28 Okla. 293, 37 L.R.A.(N.S.) 1054, 114 Pac. 328; McGillivray v. Joint School Dist. 112 Wis. 354, 58 L.R.A. 100, 88 Am. St. Rep. 969, 88 N. W. 310.

*Palda, Aaker, & Greene, Chas. H. Marshall,* and *M. R. Keith,* for respondents.

The mere vote to issue bonds does not impliedly limit the school board to the expenditure of only that sum.   McCavick v. Independent School Dist. 25 S. D. 449, 127 N. W. 476.

If the school board were assured that the maximum tax levy for the ensuing year would enable them to pay the ordinary expenses of the school district, as well as the remainder of the contract price over the funds then available, it was within their power to make the contract.   Territory ex rel. Woods v. Oklahoma, 2 Okla. 158, 37 Pac. 1094; McBean v. Fresno, 112 Cal. 159, 31 L.R.A. 794, 53 Am. St. Rep. 191, 44 Pac. 358; Smilie v. Fresno County, 112 Cal. 311, 44 Pac. 556; Weston v. Syracuse, 17 N. Y. 110; State v. McCauley, 15 Cal. 429; People v. Arguello, 37 Cal. 524; East St. Louis v. East St. Louis Gaslight & Coke Co. 98 Ill. 415, 38 Am. Rep. 97; Erie's Appeal, 91 Pa. 398; Smith v. Dedham, 144 Mass. 177, 10 N. E. 782; Valparaiso v. Gardner, 97 Ind. 1, 49 Am. Rep. 416; Indianapolis v. Indianapolis Gaslight & Coke Co. 66 Ind. 396.

The schoolhouse itself, for the purpose of valuation, is an asset of the district.   School Dist. v. Western Tube Co. 13 Wyo. 304, 80 Pac. 155; 35 Cyc. 975.

Although the powers of a school district are few and limited, a reasonable construction must be given to the powers which are actually granted.   Conklin v. School Dist. 22 Kan. 521; Code, §§ 1208, 1209, 1224, 1433.

Fisk, Ch. J.   The relator, a citizen and taxpayer in the defendant school district, seeks to enjoin certain of the defendants who are officers of such school district from issuing and delivering, and certain other defendants who are contractors and who erected and furnished a school building in such district pursuant to contract with the school

board, from receiving any warrant or warrants in payment thereof, and for other equitable relief.

At the conclusion of the trial in the district court, findings of fact and conclusions of law were made adverse to the relator's contention, and judgment entered pursuant thereto, dismissing the action. Plaintiff has appealed and demands a trial *de novo* in the supreme court.

The facts as briefly stated in appellant's brief, and which we deem correct, are as follows: "The defendant, school district, is International School District No. 5, and comprises territorially the whole of Portal township, Burke county, North Dakota. That within this territory are four country schoolhouses and a graded school in the village of Portal, all under one school board and the common school district.

"In the spring of 1913 a vote was held to bond the district to build a new schoolhouse, which carried. Also a vote to bond the district in the sum of $13,000, which carried, and the bonds were issued, sold, and the funds paid into the district treasury.

"May 27, 1913, a contract was entered into with one Carl Bartelson in the sum of $24,000 to erect a schoolhouse in the village of Portal.

"July 22, 1913, another contract for heating and ventilating, in the sum of $3,679, and on August 12, 1913, a third contract for wiring was entered into, in the sum of $599.95.

"The matter was rushed to a completion, and the schoolhouse erected and moved into, the forepart of January, 1914, and at the time suit was instituted had been used since its completion.

"March 20, 1914, papers were served upon the defendants, starting an action by the appellant and plaintiff to enjoin further issuance of warrants in payment of outstanding warrants upon these contracts, on the theory that the school district was in debt beyond the 5 per cent limit. The plaintiff started action as a resident and taxpayer on behalf of all taxpayers in the district. A temporary injunctional order was issued at the start of the action, and the case was tried November 9, 1914, resulting in an order dissolving the temporary injunction, and judgment for the defendants dismissing the action."

We deem it advisable to here set out the findings of fact of the trial court, which constitute a more detailed statement of the facts. With the exception of the first three, which relate to formal matters, respecting the parties, their official positions, etc., such findings are as follows:

"4. That heretofore and prior to the 24th day of May, A. D. 1914, pursuant to the authority given by the electors of said school district, at an election held for that purpose, the bonds of said school district in the amount of $13,000 were issued for the purpose of raising moneys with which to aid in the building of a high-school building at Portal, in said school district; and that on the 24th day of May, 1912, there was paid into the treasury of said school district as the proceeds of the sale of such bonds the sum of $13,000.

"5. That on the 27th day of May, 1913, the said school board of said district entered into a contract with the defendant Carl Bartelson, to furnish the materials and labor for the erection of a high-school building in said district, and by the terms of said contract, agreed to pay to the defendant Bartelson, on the completion of such building, the sum of $24,000, and by the terms of said contract the said building was to be completed on or before the 1st day of January, 1914; that pursuant to such contract the defendant Bartelson did furnish the material and labor for, and did construct for said school district, at the city of Portal, therein, the said high-school building, and delivered the same to the said district on or about the 1st day of January, 1914.

"6. That between the 11th day of July, 1913, and the 23d day of December, 1913, the defendant school district, through its said officers, paid to said defendant Bartelson on the contract price for said school district, in the warrants of said district, the sum of $21,352.92, and that there remains on the principal contract price for said schoolhouse, and is due and owing to said Bartelson thereon, the sum of $2,647.08.

"7. That the assessed valuation of the taxable property in the defendant school district for the year 1912 was $291,000, and the assessed valuation of the taxable property in said district for the year 1913 was $337,980, and that the assessed valuation of the taxable property. in said district for the year 1914 was $289,644.

"8. That at the time of the signing and execution of said contract by the officers of said school district with said defendant Bartelson, to wit, on the 27th day of May, 1913, the said school board, for the purpose of ascertaining whether or not the expense of building said schoolhouse could be paid out of the funds then in the treasury, and out of the proceeds of the tax levy for the ensuing school year, and other funds to be received from the state, county, and other sources during the

32 N. D.—27.

ensuing year, ascertained the amount of available cash in the treasury of said district or due to it at that time, and made an estimate of the other school funds to be received, and a computation of the amount of the tax levy at the maximum rate of 30 mills for the ensuing year, together with the uncollected taxes theretofore levied upon the property n said school district, and therefrom such board decided that the cost of the construction of such schoolhouse under said contract with the defendant Bartelson should be fully paid out of the available cash then on hand, and the estimated income of said district for the ensuing school year, such estimates showing that the total amount of funds available and the income from the various sources during the ensuing year would aggregate upwards of $35,000, and that the expense of maintenance of the schools of said district for the ensuing school year of 1913 and 1914 would be approximately $9,000, including the salaries of teachers and all other expenses; that the amount of cash on hand at the time of the execution of said contract, together with the funds received from all sources during the school year of 1913 and 1914, and the amount of uncollected taxes outstanding on the date of such contract, and the tax levy for the school year of 1913 and 1914, was as follows:

Cash in the treasury from the sale of bonds ........... $13,000.00
Cash in the general fund of the district .............. 3,618.55
Cash in the hands of the county treasurer due to said district on the 1st day of June, 1913 ................ 3,840.42
Cash received as interest paid by the district depositary .. 198.67
Cash received from the state tuition fund .............. 1,365.10
Cash received from the county tuition fund ............ 912.17
Cash received from the tuition paid by pupils from outside the district .................................... 209.25
Cash received from the school poll tax ................ 199.37
Cash received from the state of North Dakota for high-school aid .................................... 270.00
Tax levy of 30 mills on $337,980, being the assessed valuation of the taxable property within said district for 1913 10,139.40
Amount of uncollected taxes due said district on May 27, 1913 ........................................ 1,750.65
                                                        ──────────
                                                        $35,503.58

"9. That at the time of the making of said contract with the said defendant Bartelson, there were no outstanding warrants of said district unpaid, except one warrant for the sum of $1,155; that the actual amount of the expense of maintaining and operating the schools in said district for the school year ending June 30th, 1914, including the salaries of all teachers, and incidental expenses, was the sum of $9,324.-68.

"10. That at the time of the making of said contract with said defendant Bartelson, there were outstanding bonds of said school district to the amount of $15,000, and that there was at the same time in the treasury of said school district, in cash, the full proceeds of the bond issue of $13,000, and that on the 1st day of July, the beginning of the school year of 1913 and 1914, there was cash in the treasury of said district, including the proceeds of such bonds, the sum of more than $17,000.

"11. That the new school building constructed under the contract with the defendant Bartelson was intended to, and did, take the place of another school building belonging to said district and situated in the city of Portal, which had theretofore been used by said district as its high-school building, and that the said school building, together with the half block of land in said city of Portal on which it was situated, was, at the time of the making of the said contract with said Bartelson, of the value of $4,500 to $5,000, and it was estimated and considered by said defendant board that, upon the completion of the new school building, the old school building, together with the lots upon which it stood, should be sold, and would be sold, for the sum of at least $4,000, and that thereafter, in the month of May, 1914, at a duly called election within said school district for the purpose of deciding whether such old school building should be sold, it was determined by the vote of said district that such building and property should be sold, and the board of directors were authorized to sell same, and the proceeds to be turned into the general fund of the district; that at such election there were but two votes cast opposed to said sale.

"12. That the first payment by the defendant school district to the defendant Bartelson on said contract was not made until the 11th day of July, 1913.

"13. That the aggregate sum of the cash in the treasury of said

school district at the date of the execution of said contract with said defendant Bartelson, and the cash received from the various sources into the treasury of said school district during the school year of 1913 and 1914, together with the amount of the tax levy for said year, and the amount of the uncollected taxes outstanding at the date of the making of such contract, exclusive of the value of the school building so to be sold, amounted to the sum of $1,023.90, more than the amount of said Bartelson's contract, namely $24.000, and the entire expense of the maintenance of said schools and the incidental expenses of said district, the aggregate amount of such moneys and revenues being the sum of $35,503.58, and the amount of the outstanding warrants, the Bartelson contract, and the expenses of the school year being the sum of $34,479.68; and that at the beginning of the school year of 1914 and 1915, namely on July 1st, 1914, there was available funds and revenues to the credit of said school district, after the discharge of all of said contract and other liability sustained during the school year of 1913 and 1914 the said sum of $1,023.90.

"14. That on the 22d day of July, 1913, the defendant school board, in order to complete the equipment of said schoolhouse so being constructed by the defendant Bartelson, entered into a contract with the defendants Davidson & Olson to provide a heating and ventilating system for said schoolhouse, and for which heating and ventilating system, by the terms of said contract, the said school district agreed to pay the said Davidson & Olson, the sum of $3,769 within twenty days after the final completion of their contract; that said Davidson & Olson furnished and placed in said building the said heating and ventilating system, and completed their work thereon on or about the 1st day of January, 1914.

"15. That on or about the 12th day of August, 1913, the said school district, through its said school board, for the purpose of further equipping said schoolhouse with proper facilities for lighting the same, entered into a contract with the defendants Everett & Leary, whereby said school district agreed to pay to said Everett & Leary for the wiring of said schoolhouse for the purposes of lighting the same, the sum of $599.95, the same to be paid upon the full completion of their said contract; that the said defendants Everett & Leary fully performed their contract by completing the work on or before the 1st day of January, 1914.

"16. That prior to entering into said contracts with the defendants Davidson & Olson and Everett & Leary, the said board made an estimate and computation of the sources of revenue for the then current year and the next succeeding school year of said district, for the purpose of ascertaining whether or not they would be able to provide funds for the payment of said last-mentioned contractors out of the revenues of the current year and the maximum tax levy of the next succeeding school year; and said school board thereupon estimated that the state and county school funds and other sources of revenue, together with the taxes for the year 1914, plus the surplus that should remain over the expenditures and liabilities for the year 1913 and 1914, and including the amount which it was estimated would be realized from the sale of the old schoolhouse during the then current year or the subsequent school year, and from such estimate determined that there would be available for the payment of the salaries of teachers and general expenses of the school district, and of the Davidson & Olson and the Everett & Leary contracts, during the current school year and the succeeding school year of 1914 and 1915, more than $15,000, and that the schools and the defraying of incidental expenses for the school year. of 1914 and 1915 would be the sum of $8,924, adding to which the amount of the last-mentioned contracts, the total necessary expenditures for the next succeeding school year would be the sum of $13,292.95.

"17. That the tax levy within the legal limit for the year 1914 for said district amounts to the sum of $8,689.32; the estimated return from state and county tuition funds, school poll and high-school sources of revenue, would be the sum of $3,000, and that there would be available from the sale of the old school house the sum of $4,000; that taking into consideration the amount of such tax levy, the estimated returns from the various funds and the return from the sale of the old school-house, and the excess over the expenditures of the school year ending June 30, 1914, there would be and will be available for payment of said contracts and operating expenses of the current year the sum of $16,-713.22 leaving a surplus, after the discharge of the obligations of all three of the contracts herein referred to, and the payment of all the expenses of the maintenance of said school district during the two years of $3,420.20.

"18. That during the school year of 1913 and 1914 and the current

school year, no warrants have been drawn upon the treasury of said defendant school district in excess of the revenues and funds available for the ultimate payment thereof, without taking into consideration the anticipated proceeds of the sale of the old school building.

"19. That there has been paid by said school district, in warrants, the sum of $2,512 on the contract of the said Davidson & Olson, and that there remains unpaid by warrants or otherwise on said contract the sum of $1,257, and the amount of said contract with the defendants Everett & Leary has been fully paid by the warrants of said district."

Appellant contends that the evidence is insufficient to support findings Nos. 8, 11, and 14 to 19, both inclusive; he also contends that the evidence is wholly insufficient to justify the court in finding that the defendant school district could legally enter into the contracts described in the pleadings, and that the same conclusively establishes that on May 27, 1913, the defendant school district in entering into the contract with the defendant Bartelson for the construction of such school building exceeded the constitutional debt limit of 5 per cent of all taxable property within such district.

In view of appellant's concession at the argument, to the effect that the whole question for consideration is whether the contracts for the erection and equipment of the new school building created an indebtedness in excess of the constitutional limit of 5 per cent on the assessed valuation of the district as fixed by § 183 of the Constitution, we deem it useless to here narrate the testimony in support of the various findings challenged in appellant's brief. Suffice it to say that after duly considering such testimony we deem such findings sustained by the proof. Indeed, there seems to be no serious dispute in the evidentiary facts, upon any material point, but the controversy appears in the main to involve legal questions and conclusions merely. As stated in appellant's printed brief: "The issue is whether the respondent school district has an indebtedness beyond the 5 per cent limit." In support of the affirmative of this issue, counsel for appellant call attention to the conceded fact that the assessed valuation for the years 1913 and 1912 were $337,980 and $291,519, respectively, and that consequently the limit of indebtedness under the 1912 assessment would be $14,575.95, and under the 1913 assessment $16,899. They then call attention to the fact that on May 27th, 1913, the date of the Bartelson contract, the district

was already indebted for bonds outstanding in the sum of $15,000, and they assert that the Bartelson contract created a present additional indebtedness of $24,000, the Davidson & Olson contract $3,769 and the Everett & Leary contract $599.95, making a total additional indebtedness of $28,728.95. Of course, if counsel are correct in their assumption that these contracts created such a present indebtedness, it is clear that the constitutional limit has been greatly exceeded. In support of their assumption they cite: Crogster v. Bayfield County, 99 Wis. 1, 74 N. W. 635, 77 N. W. 167; Küchli v. Minnesota Brush Electric Co. 58 Minn. 418, 49 Am. St. Rep. 523, 59 N. W. 1088; Levy v. McClellan, 196 N. Y. 178, 89 N. E. 569. To the above may be added numerous authorities collected in the note to the case of Superior Mfg. Co. v. School Dist. as reported in 37 L.R.A.(N.S.) 1054. These cases fully support appellant in his contention that the entering into these contracts operated in law to create a present indebtedness or obligation against the school district, and counsel for respondents very frankly concede that there are authorities holding that the making of such contracts creates a present indebtedness to the full amount of the contract, but they assert that they have found no decision of this court so holding, and that a considerable number of courts of high authority take a contrary view, citing: Territory ex rel. Woods v. Oklahoma, 2 Okla. 158, 37 Pac. 1094; Mc Bean v. Fresno, 112 Cal. 159, 31 L.R.A. 794, 53 Am. St. Rep. 191, 44 Pac. 358; Smilie v. Frisno County, 112 Cal. 311, 44 Pac. 556; Weston v. Syracuse, 17 N. Y. 110; State v. McCauley, 15 Cal. 429; People v. Arguello, 37 Cal. 524; East St. Louis v. East St. Louis Gaslight & Coke Co. 98 Ill. 415, 38 Am. Rep. 97; Erie's Appeal, 91 Pa. 398; Smith v. Dedham, 144 Mass. 177, 10 N. E. 782; Valparaiso v. Gardner, 97 Ind. 1, 49 Am. Rep. 416; Indianapolis v. Gaslight & Coke Co. 66 Ind. 396. These cases involve contracts calling for payment in installments, and most, if not all, of them relate to contracts for necessary current expenses, such as a supply of water or lights, covering a term of years and payable monthly, quarterly, or annually. While there is some diversity of opinion among the courts upon the question, the weight of authority seems to favor the view that obligations under contracts of this nature, providing for payments in installments as the service is rendered, do not create a present indebtedness against the municipality and that such indebtedness is not created

until the service is performed. South Bend v. Reynolds, 155 Ind. 70, 49. L.R.A. 795, 57 N. E. 706; Wade v. Oakmont, 165 Pa. 479, 30 Atl. 959; New Orleans Gaslight Co. v. New Orleans, 42 La. Ann. 188, 7 S. W. 559; Mercantile Trust & Deposit Co. v. Columbus, 161 Fed. 135; Connor v. Marshfield, 128 Wis. 280, 107 N. W. 639; Anoka Waterworks E. L. & P. Co. v. Anoka, 109 Fed. 580; Joseph v. Joseph Waterworks Co. 57 Or. 586, 111 Pac. 864, see also, 57 Or. 592, 112 Pac. 1083, denying petition for rehearing. For a very good statement of the rule, see Allison v. Chester, ( W. Va.) Ann. Cas. 1913B, 1174, and Logansport v. Jordan, (Ind.) 17 Ann. Cas. 415, and valuable notes to these cases wherein many authorities are reviewed. After a careful consideration of the question, we deem the sound rule relating to contracts of the nature of those before us to be that an indebtedness within the meaning of § 183 of our Constitution was created against the district at the time these contracts were entered into.

Applying this rule to the facts before us we are forced to the conclusion that the constitutional debt limit was exceeded. These contracts cannot be said to create merely a future contingent liability, as did the contracts involved in Bismarck Water Supply Co. v. Bismarck, 23 N. D. 352, 137 N. W. 34. We there held that the city, by obligating itself to pay a mere future contingent liability in excess of the debt limit did not thereby violate the constitutional debt limit provision. It will be observed that the language of the Constitution, § 183, is positive and unequivocal. It reads: "The debt of any . . . school district . . . shall never exceed 5 per cent upon the assessed value of the taxable property therein. . . . All bonds or obligations in excess of the amount of indebtedness permitted by this Constitution . . . shall be void." Construing the above section, this court in Darling v. Taylor, 7 N. D. 538, 75 N. W. 766, quotes with approval from the decisions of Iowa, West Virginia, and South Dakota, and reached the conclusion that no added indebtedness arises within such constitutional restriction by the issuance of a county warrant for current expenses in anticipation of the collection of taxes already levied. The obvious purpose of the constitutional debt limit provision was to prevent the municipalities therein mentioned from improvidently contracting debts for other than ordinary current expenses of administration. As said by the court of appeals of New York in Levy v. Mc-

Clellan, 196 N. Y. 178, 89 N. E. 569: "It was to restrict their borrowing capacity and thus to minimize·the mischievous consequences to the taxpayers of extravagance in city expenditures. . . . That is a mandate directed to all municipal officers, which, in effect forbids them to obligate the municipality in any manner which may result in an indebtedness in excess of 10 per cent of the assessed valuation." And that court squarely held that in determining the extent of existing indebtedness of the municipality in order to ascertain the margin of its constitutional debt limit, its liability upon contracts for public improvements should be included where they are to be met from an issue of bonds, and not from current revenues or annual tax collections, even though but a small portion of such contracts have been executed by the contractors. We quote from the opinion as follows: "Why should these contracts not be regarded as constituting an indebtedness of the city? The law presumes that the parties to a contract will perform their agreements. If the incurring of contractual obligations to pay for·public improvements does not represent an indebtedness which is to be taken into account in ascertaining the margin of the debt limit, the force of the constitutional prohibition becomes doubtful. If the provision applies, not to the time of the execution of the contract, but only to the time when payments become due, very remarkable results may follow. To illustrate: If, prior to the time of the completion of a contract for an extensive public improvement, made when the margin of the city's debt limit, as measured by an indebtedness consisting in direct, or absolute obligations, seemed to warrant it, the debt limit is reached through the issuance of bonds to meet payments upon other contracts subsequently made, but completed at an earlier date, is the obligation of payment upon the first contract avoided? The constitutional provision is that 'all indebtedness in excess of such limitation, . . . shall be absolutely void;' with an exception which does not apply to the case supposed. Can that provision be invoked by a taxpayer to defeat an obligation of the city, valid and binding when incurred? I do not think we should agree to that. Then, may the validity of a contract obligation depend upon conditions, as determined by subsequent facts? If contracts are binding when made, are they to be invalidated by after-occurring events in the city's financial career? If the answer is obvious, it is at once suggested to the mind that

the constitutional debt limitation does include within its provision the actual, or estimated, indebtedness upon such contracts. Again, to illustrate what I conceive to be the fallacy of the argument in favor of the exclusion of such contract obligations from the computation of indebtedness, if the assessed valuation of taxable real estate should be less in a subsequent year, and the margin of the debt limit is, in consequence, reached or narrowed, is the indebtedness to be met upon a contract made upon the basis of the assessment rolls in a prior year, showing an ample debt margin, avoided, because the payment will put the city in debt beyond the constitutional limit?    .  .  .    If the provision as to the debt limit is not applicable to binding contract obligations when incurred, then how is it safely applicable when the obligations mature? If it is not heeded when obligations exist upon contracts for public improvements, of what avail will it be if the obligation to meet payments maturing in subsequent years shall result in a burdensome taxation?

"It seems to me that the better conclusion to be reached upon this question, and the one in better accord with the policy of the constitutional provision, is that, in ascertaining the margin of the city's constitutional debt limit, 'existing indebtedness' must be regarded as including the city's liability upon contracts for public improvements, which is intended to be met from an issue of bonds.

"Decisions by the courts of other states are cited by counsel on either side of the question. Many are inapplicable, by reason of the differing provisions of the state Constitutions. In Illinois the decisions of the supreme court support the views which I have expressed upon the subject of what constitutes an indebtedness. The Constitution of that state prohibits allowing a city 'to become indebted  .  .  .  to and amount, including existing indebtedness, in the aggregate exceeding 5 per cent on the value of taxable property therein, to be ascertained by the last assessment for state or county taxes,' etc. In Culbertson v. Fulton, 127 Ill. 30, 18 N. E. 781, it was sought to restrain the city from accepting water works, constructed for it under a contract, on the ground that the constitutional provision would be violated. The court held that 'by entering into the contract the city became indebted. The obligations entered into by the terms of the contract constitute such an indebtedness as is contemplated by the language of the Constitution. It

cannot be said that the indebtedness did not come into being until the work was completed and accepted by the city.' In Walla Walla v. Walla Walla Water Co. 172 U. S. 1, 43 L. ed. 341, 19 Sup. Ct. Rep. 77, to which the referee refers, the question arose as to whether a contract, by which the city agreed to pay a rental of $1,500 a year for twenty-five years for a water supply, created an indebtedness of the aggregate amount of the rentals in all the years. In holding that it did not, the United States Supreme Court considered that a distinction exists between contracts for the supply of water or gas for a stipulated rental, and contracts for the erection of a public improvement; observing that in the latter case 'the debt is created at once, the time of payment being only postponed.' . . .

"Without an ampler discussion, I am of the opinion that the amounts which on June 30th, 1908, were involved in the contracts of the city for public improvements, and which the referee states as being upwards of $54,000,000, should have been included in ascertaining the city's 'existing indebtedness.' That would result in a reduction, *pro tanto,* of the 'margin of constitutional limit of indebtedness,' as stated by the referee; less, of course, by the amount already charged against the city, as earned upon the contracts, *viz.,* $2,553,933.92."

The reasoning and conclusion of the New York court impresses us as sound, and appears to have the support of the great weight of authority, and we have no hesitancy in adopting the rule thus announced for this jurisdiction. To the same effect see Crogster v. Bayfield County, 99 Wis. 1, 74 N. W. 635, 77 N. W. 167; Küchli v. Minnesota Brush Electric Co. 58 Minn. 418, 49 Am. St. Rep. 523, 59 N. W. 1088, and the cases cited in the note to Superior Mfg. Co. v. School Dist. in 37 L.R.A.(N.S.) 1054. Also the very able and exhaustive opinion of Judge Deemer in Windsor v. Des Moines, 110 Iowa, 175, 80 Am. St. Rep. 280, 81 N. W. 476. Judge Deemer very clearly distinguishes contracts of the nature before us from those for the ordinary current expenses. We quote: "Again, it is argued that the contract does not create a debt, but merely a contractual obligation, which may only become a debt as the light was furnished and the compensation earned. It seems to be conceded that, if the contract related to the ordinary expenses of the city, as the furnishing of light or water, or of fire protection, this argument would be sound. Indeed, it is express-

ly so held in many of the cases heretofore cited. But does this rule apply to a contract for the construction of a plant for the purpose? Expressions may be found in some of the cases cited that give color to this argument (see Dively v. Cedar Falls, 27 Iowa, 227; Anderson v. Orient F. Ins. Co. 88 Iowa, 579, 55 N. W. 348; Allen v. Davenport, 107 Iowa, 90, 77 N. W. 532; Burlington Water Co. v. Woodward, 49 Iowa, 58); and in some cases this is no doubt the rule. See East St. Louis v. East St. Louis Gaslight & Coke Co. 98 Ill. 415, 38 Am. Rep. 97; Crowder v. Sullivan, 128 Ind. 486, 13 L.R.A. 647, 28 N. E. 94; Smith v. Dedham, 144 Mass. 177, 10 N. E. 782; Merrill R. & Lighting Co. v. Merrill, 80 Wis. 358, 49 N. W. 965; Walla Walla v. Walla Walla Water Co. 172 U. S. 1, 43 L. ed. 341, 19 Sup. Ct. Rep. 77. But where the contract is for the erection of electric light plants, or for any other improvement, and the time of payment is postponed to a later date, and no special levy for the purpose of erecting such works is authorized, the rule seems to be well settled that the sums to become due in the future must all be taken into account in estimating the amount of the existing indebtedness of the municipality. Culbertson v. Fulton, 127 Ill. 30, 18 N. E. 781; Council Bluffs v. Stewart, 51 Iowa, 385, 1 N. W. 628; French v. Burlington, 42 Iowa, 614.

"This must be the true rule, for if appellants' contention be correct, the city might, by contracts such as the one in suit, absorb all the general revenues in advance, and leave nothing for the payment of current expenses. Suppose a city should anticipate all its general revenues, and thus leave nothing for the payment of current expenses; and suppose, further, that it should issue warrants for the payment of these expenses, which were not paid for want of funds; could not the holder of these warrants enforce them against the city, and if enforced, and the city is compelled to pay (as no doubt, it would be obliged to do) the amount thereof, in addition to the amounts previously appropriated for improvements, would not the very object of the constitutional provision be thwarted, and a wise provision of our fundamental law render nugatory? The answer to these propositions is so obvious that no amount of refinement can add anything to the conclusion. We are cited to no case that establishes a contrary doctrine. Language is no doubt used in some of them which is broad enough to sustain appellants' contention, but that language must be interpreted in the light of the facts dis-

closed in the opinions. So interpreted, there is no real conflict in the cases on this proposition. As a general rule, a city may not anticipate its general revenues to be created by a scheme of general taxation. Special taxes and assessments may, however, be anticipated in a proper case. Davis v. Des Moines, 71 Iowa, 500, 32 N. W. 470; Clinton v. Walliker, 98 Iowa, 655, 68 N. W. 431; Anderson v. Orient F. Ins. Co. 88 Iowa, 579, 55 N. W. 348; Tuttle v. Polk, 92 Iowa, 433, 60 N. W. 733; Allen v. Davenport, 107 Iowa, 90, 77 N. W. 532. As supporting the general rule announced, see also State, Read, Prosecutor, v. Atlantic City, 49 N. J. L. 558, 9 Atl. 759; Beard v. Hopkinsville, 95 Ky. 239, 23 L.R.A. 402, 44 Am. St. Rep. 222, 24 S. W. 872; Spilman v. Parkersburg, 35 W. Va. 605, 14 S. E. 279; Prince v. Quincy, 128 Ill. 443, 21 N. E. 768; State v. Fayette County, 37 Ohio St. 526. That such is the legislative intent is clearly indicated by § 1 of chapter 4 of the Acts of the 22d General Assembly, which reads as follows: 'All cities of the first class shall make their appropriation for all the different expenditures of the city 'government for each fiscal year at or before the beginning thereof, and it shall be unlawful for the city council or any officer, agent, or employee of the city, to issue any warrant, enter into any contract, or appropriate any money in excess of the amounts thus appropriated for the different expenses of the city, during the year for which said appropriation shall be made, and any such city shall not appropriate in the aggregate an amount in excess of its annual legally authorized revenue, but nothing herein shall prevent such cities from anticipating their revenues for the year for which such appropriation was made, or from bonding or refunding their outstanding indebtedness, provided that this section shall not apply to cities of the first class organized since 1881.' In construing this section we said, in Phillips v. Reed, 107 Iowa, 331, 76 N. W. 850, 77 N. W. 1031, that the object of the law was to place municipal corporations on a cash basis, and prevent the accumulation of such a floating indebtedness as appears in that case." See also Culbertson v. Fulton, 127 Ill. 30, 18 N. E. 781.

Concededly, at the date the Bartelson contract was made the school district was indebted in the sum of $15,000 in bonds and $1,155 in an outstanding warrant, and it had but $16,618.35 in its treasury. The limit of indebtedness under § 183 of the Constitution, if based on the

1913 assessment, was but $16,899.  It is entirely clear, and we think practically conceded, that at such date the district did not have funds on hand over and above those necessary to discharge the ordinary current expenses, sufficient to discharge the liabilities incurred under such contracts.  The 1913 tax levy was not then made, and the revenues to be derived therefrom could not be anticipated in order to augment the funds available for meeting the new liabilities thus incurred.  But even if this could properly be done, it would not change the result.  It is needless to say that all persons dealing with public corporations or their officers are in law chargeable with notice of their powers and the limitations thereof.  Roberts v. Fargo, 10 N. D. 230, 86 N. W. 726.

We think our holding as above stated sufficiently disposes of respondent's contention that these contracts were authorized by § 2218, Compiled Laws.  Certainly this section could not authorize the incurring of indebtedness in excess of the constitutional debt limit.  This section does not purport to do this, but its evident purpose was, as its language clearly shows, to limit public officers in the contracting of indebtedness or incurring of liability (within the debt limit) to such sum as may be liquidated during the current or subsequent years out of the revenues which may be raised within the maximum rate of taxes which may be levied as prescribed by law.  It has, as we view it, nothing to do with the question of the power to anticipate revenues to be derived from future levies in determining whether the constitutional debt limit has been exceeded.  The judgment appealed from is reversed, and the district court is directed to enter a decree adjudging the warrants which have been issued and are outstanding in payment of the balance due on such contracts to be null and void, and directing that the same be canceled; also adjudging that the defendant officers be perpetually restrained and enjoined from paying such warrants or any further sums on any of the contracts mentioned in the complaint, and that the warrants which have been issued in payment of such contracts in excess of the debt limit, and which are now outstanding and in the possession and owned by any of the defendants be ordered to be delivered to the court for cancelation.  Appellant to recover his costs on this appeal.

Fisk, Ch. J.  Filed January 15, 1916.  Since the above opinion was filed we have been requested by counsel to determine what portion of

the contract indebtedness, if any, is within the debt limit. The concluding portion of such opinion was written upon the assumption that the payments made under the Bartelson contract more than exceeded the debt limit, but our attention is now called to the fact that no payments thereon have been made except as stated in finding number 6, by the issuance of warrants, and that such warrants are still outstanding and unpaid.

In compliance with such request we have reconsidered this phase of the case, and for the information of the trial court in entering its judgment, as well as the parties, we will briefly state our conclusions.

At the date the Bartelson contract was entered into (May 27, 1913) the debt limit of the district was $14,550, being 5 per cent of the assessed valuation of the taxable property of such district for the preceding year. At that date the district was indebted in the sum of $16,155. But it had available resources to off-set such indebtedness in the sum of $21,374.10, or a net credit balance of $5,219.10. The district could therefore create a valid indebtedness in the sum of $14,550 plus $5,219.10, or a total of $19,769.10. The Bartelson contract therefore exceeded the debt limit in the sum of $4,230.90. Or in other words such contract was valid to the extent only of $19,769.10. The other contracts were both void because in excess of the debt limit.

The judgment of the district court is reversed, and that court is directed to enter a decree adjudging that all warrants issued in payment of the Bartelson contract in excess of the sum of $19,769.10 are void, and directing the cancelation thereof, and that all warrants issued on the Davidson & Olson and the Everett & Leary contracts be adjudged null and void and be canceled; also adjudging that the school district officers be perpetually restrained and enjoined from paying such warrants or any of them, and from paying or issuing warrants for any further sums on said contracts except to the said Bartelson, and as to him only to the extent and amount above indicated as within said debt limit; also adjudging that all warrants heretofore issued on said contracts, except as above indicated, which are now outstanding and in the possession and owned by any of the defendant contractors, be ordered to be delivered to the court for cancelation.