INHABITANTS OF OAK BLUFFS *vs.* COTTAGE CITY WATER COMPANY.

Dukes County.   December 10, 1919. — February 24, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, & JENNEY, JJ.

*Municipal Corporations,* Contracts.  *Water Supply.  Contract,* Construction, *Oak Bluffs.  Cottage City Water Company.*

In a suit in equity by the town of Oak Bluffs against the Cottage City Water Company, organized under St. 1890, c. 151, to enjoin the defendant from charging for water supplied to domestic consumers in the town a rate higher than that stated in the schedule annexed to an agreement between the town and the company, made in 1910, the plaintiff alleged and contended that that agreement provided that the rate stated in its schedules should be maintained by the defendant unchanged for twenty years, and, in determining the case, it was *assumed,* without so deciding, that the town had authority to enter into a proper contract with the company respecting water rates to be charged for domestic consumption.

Under the authority conferred by a vote of the town of Oak Bluffs authorizing the selectmen to make a contract with the Cottage City Water Company "for public fire hydrant service and water for public uses and purposes substantially as set out in the contract submitted by the Water Co.," the town made a contract with the company, the preamble of which recited that the parties were "desirous of fixing the terms and conditions under which public Fire Hydrant service, and water for public uses and purposes" should "be furnished and regulated during a further period of twenty" years, but made no mention of a purpose to fix rates "for domestic, manufacturing, and other purposes." In the first paragraph the company agreed to maintain in the town for twenty years a complete system of water works for public and domestic uses. The thirteenth paragraph of the contract provided that the company would at once so revise its rates "that the prices to be charged for the use of water for private consumption and the terms thereof shall conform to the schedules therefor an-

nexed hereto, and such service will be governed by and subject to the revised draft of rules and regulations attached thereto, subject to such reasonable addi-tions thereto and amendments and modifications thereof from time to time as. shall be found proper and expedient, and the laws of the Commonwealth may permit or require." The sixteenth paragraph fixed a rate to be paid by the town for the use and rental of fire hydrants "all during said term of twenty" years. The seventeenth paragraph declared the town's intent to be further to limit and regulate the rates to be paid by it to the company within the limits of the town "for the period provided herein according to the nature and terms, hereof" subject to the provisions of St. 1909, c. 319, and provided further that nothing therein contained should "prevent the parties hereto, if they shall mutually so desire, from reopening negotiations for the amendment and modi-fication of any of the provisions hereof with respect to any matters or question concerning the supplying of water for public or private uses or any of the terms, provisions, or conditions thereof." *Held*, that the rates to be charged to do-mestic consumers were not fixed by the contract for the entire term of twenty years, and that the company might raise its rates to domestic consumers in order to secure a fair return for services rendered, subject to the provisions of St.. 1914, c. 787, which superseded St. 1909, c. 319.

BILL IN EQUITY, filed in the Supreme Judicial Court on June 3,. 1919, to enjoin the defendant from charging for water supplied to domestic consumers in the town of Oak Bluffs a rate higher than that stated in a schedule annexed to an agreement, dated April 9, 1910, between the plaintiff and the defendant, described in the opinion, the plaintiff alleging that that agreement pro-vided that such rates should be maintained unchanged for twenty years; and for specific performance of that contract.

The preamble and the first paragraph of the contract were as follows:

"This agreement made and concluded this ninth day of April,. A. D. 1910, by and between the Cottage City Water Company, a corporation organized under the laws of the Commonwealth of Massachusetts, Chapter 151, Acts of 1890, party of the first part, and the Town of Oak Bluffs (formerly Cottage City) in said Commonwealth, party of the second part, witnesseth, that:

"Whereas a certain contract entered into November 25, 1889,. by and between the Town of Cottage City and Wheeler & Parks, assignors to said Cottage City Water Company, for the construc-tion, operation, and maintenance of a system of water works in said Town, for the extinguishment of fires and for domestic, manufacturing, and other purposes as therein set forth, will ex-pire during the month of June, 1910; and

"Whereas the said parties hereto are desirous of fixing the terms and conditions under which public Fire Hydrant service, and water for public uses and purposes shall be furnished and regulated during a further period of twenty (20) years beginning June 15, 1910;

"Now therefore, in consideration of the agreements, covenants, stipulations and provisions hereinafter set forth, the said party of the first part, the Water Company, hereby agrees with said party of the second part, the Town of Oak Bluffs, as follows, to-wit:

"1. Term and General Scope of Contract. To maintain in said Town of Oak Bluffs for a further period of twenty (20) years from June 15, 1910, the full and complete system of water works now owned and operated by the Company and to supply water for public uses and for domestic, manufacturing, and other purposes; and to enlarge, extend, and otherwise improve the same from time to time conformably to the growing needs of the service, and as herein further provided."

There were seventeen paragraphs. The second paragraph of the contract related to the source and protection of the purity of the water supply. The third and fourth paragraphs related to the character of the pumping machinery and the maintenance and location of a standpipe or water tower. The fifth, sixth, seventh, eighth, ninth, tenth and eleventh paragraphs related to the hydrant service and its maintenance and the maintenance of proper mains and standpipe. The twelfth paragraph related to the restoration of streets, ways, grounds and property dug up by the company in the conduct of its business. The thirteenth paragraph is quoted in the opinion. The fourteenth paragraph related to the installation of a public drinking fountain and of a faucet at a cemetery. The fifteenth paragraph was a provision for plans to be furnished to the town by the company. The sixteenth paragraph fixed the hydrant rental. The seventeenth paragraph is quoted in the opinion.

The defendant demurred to the bill. The demurrer was heard by *Braley*, J., and by his order an interlocutory decree was entered overruling it, from which the defendant appealed.

The suit then was heard by a master. Material facts found by him are stated in the opinion. Both parties filed objections

and exceptions to the report, which related solely to rulings as to evidence and findings of fact. The suit came on to be heard by *Jenney*, J., and by him was reserved for determination by the full court upon the bill, the answer, the demurrer, the master's report and the objections and exceptions thereto.

*S. R. Wrightington*, for the plaintiff.

*R. A. Stewart*, (*F. H. Nash* with him,) for the defendant.

RUGG, C. J. This is a suit in equity whereby the town seeks to restrain the raising of water rates to domestic consumers by the water company on the ground that such action is contrary to a contract between the parties.

The defendant was organized pursuant to St. 1890, c. 151. The power of the town and of the defendant to make contracts touching the subjects of water and water supply is set out in § 5 of that act, in these words: "The said corporation may distribute the water through said town of Cottage City or any part thereof, and may regulate the use of said water and fix and collect water rates to be paid for the use of the same. And said town, or any individual or corporation, may make such contracts with said water company to supply water for the extinguishment of fires and for other purposes as may be agreed upon by said town, individual or corporation, and said Cottage City Water Company. And said water company may receive and hold an assignment of any contract already authorized and entered into by said town with any of the incorporators hereunder, for a supply of water for the extinguishment of fire and for other purposes, whereupon such contract shall be of full force and virtue, binding both the said town and water company." The authority to make a contract with a water company to supply its inhabitants with water for domestic and for all other uses had been conferred upon towns long before the incorporation of the defendant. St. 1873, c. 255, now R. L. c. 25, § 31. *Smith* v. *Dedham*, 144 Mass. 177, 178. It is assumed for the purposes of this judgment, but without so deciding, that the town had authority to enter into a proper contract with the water company respecting water rates to be charged for domestic consumption.

The contract mentioned in and confirmed by § 5 of said c. 151 expired in 1910 and timely negotiations were had between a committee of the town and the water company respecting terms of

another contract. The result was that such a contract was agreed upon tentatively and at a town meeting held in March, 1910, upon a sufficient article it was unanimously voted that the selectmen were empowered to contract with the water company "for public fire hydrant service and water for public uses and purposes substantially as set out in the contract submitted by the water Co., to this meeting." The pertinent clauses of that contract are as follows: "13. Rates, Rules and Regulations Governing the Use of Water. Upon the execution and final ratification of this contract by both parties thereto, the Company will so revise its Rates, that the prices to be charged for the use of water for private consumption and the terms thereof shall conform to the schedules therefor annexed hereto, and such service will be governed by and subject to the revised draft of rules and regulations attached thereto, subject to such reasonable additions thereto and amendments and modifications thereof from time to time as shall be found proper and expedient, and the laws of the Commonwealth may permit or require." Annexed to the contract are schedules of rates for domestic consumers of water grouped in several classifications.

Paragraph 16 of the contract fixes in detail the prices for the use and rental of fire hydrants, which were to be paid by the town itself, its phrase being "to pay for the rental and use" at the specified rates "all during said term of twenty (20) years."

Paragraph 17 of the contract was in these words: "And the Town of Oak Bluffs hereby determines and declares that it has entered into this contract with the intent and purpose to further limit and regulate the rates and prices to be paid by it to the said Water Company within the limits of said Town for the period provided herein according to the nature and terms hereof, and in so far as it may lawfully act and bind itself herein, subject to the provisions of Chapter 319, Acts of 1909. Nothing herein contained, however, shall prevent the parties hereto, if they shall mutually so desire, from reopening negotiations for the amendment and modification of any of the provisions hereof with respect to any matters or question concerning the supplying of water for public or private uses or any of the terms, provisions, or conditions thereof."

St. 1909, c. 319, above cited, conferred upon the State board of

health power upon complaint by the selectmen of a town or by fifty customers of a water company to "make such recommendations concerning the reduction, modification or continuation of such charges for service" and certain other matters "as the board shall deem just and proper." That act was repealed by St. 1914, c. 787, which conferred upon the board of gas and electric light commissioners power to fix and revise water rates furnished "by corporations and companies" in accordance with the procedure and terms of St. 1914, c. 742, §§ 162, 163.

Rates to private consumers of water were charged in accordance with the schedule annexed to the 1910 contract until 1918, when the water company, after communication with the board of gas and electric light commissioners, increased somewhat its rates to domestic consumers. A second increase was made in 1919, both such increases having been made because the revenue obtained from the rates of 1910 was inadequate to meet its expenses and afford a fair return on its investment. Neither the town nor consumers have made complaint for reduction of these recently established rates under St. 1914, c. 742, § 162.

The chief question to be determined is whether the contract of 1910, according to the correct construction of its terms, purports to fix definitely the rates for domestic consumption for a period of twenty years, unless changed by agreement with the town. The only part of the contract which purports to establish rates for domestic consumption is paragraph 13 quoted above. It is to be noted that there is nothing in that paragraph which by fair intendment fixes rates for any definite period of time. The obligation of the water company therein stated is to "revise its Rates" so that the prices shall conform to the schedule annexed. Instead of saying that the prices so fixed shall be permanent or shall continue for the term of the contract, they are expressly made "subject to such reasonable additions thereto and amendments and modifications thereof from time to time as shall be found proper and expedient, and the laws of the Commonwealth may permit or require." This modifying clause applies to all the preceding part of the paragraph. It is not limited to the "rules and regulations" alone. The only matter therein set forth concerning which there was at that time any specific provision in the laws of the Commonwealth was the subject of charges to be made

and the kind of service to be rendered. It is not rational to exclude "rates" and "prices" from the operation of such laws when otherwise the qualifying clause would have no practical force. "The general rule that a modifying clause is ordinarily to be confined to the last antecedent does not apply where a consideration of the subject matter requires a different construction." *Greenough* v. *Phoenix Ins. Co. of Hartford,* 206 Mass. 247, 251.

It would be natural that a town and a water company, when entering into a contract for a score of years, should not undertake to fix a rigid rate for domestic consumption for the whole period but should frame their agreement to conform to the existing statutory law providing for inquiry into that subject, in case of dissatisfaction by any party in interest not susceptible of composition by negotiation, by an impartial State board. The words used in this paragraph lend themselves readily to the effectuation of such a normal purpose. To reach any other conclusion would require some wrenching of the sense of language and would attribute no meaning or force to some words of the contract, a result not to be reached unless almost imperatively required. When it was the purpose of the parties to fix the price for a definite period, they knew how to employ unequivocal language to that end. That is manifest from paragraph 16 of the contract where, touching the rental of fire hydrants to be paid by the town, it is said that the rate there established shall continue "all during said term of twenty (20) years." The absence of words of similar import from paragraph 13 of the contract is significantly expressive of a different intent.

This construction is confirmed by paragraph 17, wherein is declared the purpose of "the Town of Oak Bluffs" to be to "limit and regulate the rates and prices to be paid by it to the said Water Company . . . for the period provided herein." The agreement here is confined to "the rates and prices to be paid by it," that is by the town of Oak Bluffs, and does not extend beyond that bound to the rates and prices to be paid by the general public "for the use of water for private consumption." This last phrase used in paragraph 13 shows plainly enough that the parties knew how to describe that class of rate payers when they wanted to refer to them. Even this declaration of purpose is expressly made subject to the provisions of St. 1909, c. 319.

The preliminary part of the contract recites that the "parties hereto are desirous of fixing the terms and conditions under which public Fire Hydrant service, and water for public uses and purposes shall be furnished and regulated during a further period of twenty" years, but omits any reference to an intention to fix the rates "for domestic, manufacturing, and other purposes," a supply of water for which as well as "for public uses" is an obligation assumed by the water company under paragraph 1 of the contract. This declared purpose of the parties conforms to the vote of the town conferring authority to contract with the water company, which as already quoted was for "public fire hydrant service and water for public uses and purposes." "Terms and conditions" for the "public Fire Hydrant service" are fixed by paragraphs 5, 6, 7, 8, 10, 11 and 16 of the contract, while "water for public uses and purposes" in connection with two "public drinking fountains" and "one faucet at or near the entrance to the cemetery of the Town for the use of owners of lots therein," to be furnished by the water company, is required by paragraph 14 of the contract. Thus there is complete satisfaction of the declared purpose of the parties in making the contract and of the vote of the town authorizing the contract without including rates for domestic consumption for any definite period of time.

No private consumer of water was a party to this contract. The town and the water company alone were signatories. It expressly was provided by St. 1909, c. 319, to which the contract is made subject, that fifty customers of the company may complain in writing to the State board of health as to the charges made by the company. It is unlikely that the town and the water company could have intended to bind themselves irrevocably and without opportunity for revision on the initiative of either when there was ever present the right of fifty consumers to start a proceeding for the reduction of rates. Such a stipulation would have been one sided.

The meaning of the contract is that the rates and prices to be charged to the domestic consumers for water was not fixed by the contract rigidly for the entire term of twenty years from 1910, but without infraction of its terms it is open for the water company to attempt to secure under its charter rights as modified by general law a fair return for the service rendered by it to

its domestic and other private consumers and customers, which alone is the avowed purpose of the increases made in 1918 and 1919. See *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 317.

*Bill dismissed with costs.*