[File No. 6122.]

JOHN R. JONES, John Green, H. L. Wipperman, J. P. Cunningham, and Paul Kinn, Plaintiffs and Appellants, v. BRIGHTWOOD INDEPENDENT SCHOOL DISTRICT, NO. 1, RICHLAND COUNTY, ET AL., Respondents, and ST. ANTHONY & DAKOTA ELEVATOR COMPANY, a Corporation, and Osborne-McMillan Elevator Company, a Corporation, Intervenors and Respondents.

(247 N. W. 884.)

Opinion filed April 10, 1933.

*Conmy, Young & Conmy* and *Maurice S. Aker,* for appellants.

278

*Lawrence, Murphy, Fuller & Powers,* for respondent.

*Libby & Harris,* for intervenors.

BURR, J.  Plaintiffs seek to enjoin the defendants from levying

taxes to pay certain warrants and bonds issued by Brightwood Independent School District No. 1 in Richland County.

Plaintiffs allege that this school district is organized under the "provisions of a special act of Dakota Territory," which provided for a board of education with power to levy taxes not to exceed "two cents on the dollar of valuation of the taxable property of said District;" that by amendment in Chapter 205 of the laws of 1909 the board may issue bonds in an aggregate amount not to "exceed fifty mills on the dollar of the assessed valuation of the property of the said district;" that the board is forbidden to incur expenditures in any year in excess of the income for that year; that the assessed valuation of the district for the year 1919 to 1930 inclusive ranged from about $616,000 in 1919, to a little over $1,620,000 in 1920 and $1,205,000 in 1930; and that the bonded indebtedness of the district was $150,000 in July 1924 and $100,000 on July 1, 1931; with outstanding unpaid warrants on July 1, 1931, of approximately $66,000.

After showing the amount of cash in the various district funds plaintiffs allege the school board, in July, 1929, adopted a resolution with reference to the necessary amount of taxes to be levied, including a reserve fund of over $24,000 to take care of this outstanding indebtedness, and in October, 1929, after showing the district owed outstanding warrants amounting to over $103,000; authorized an annual levy to pay one quarter of the excess over the debt limit and for interest on the total amount, for four successive years; that in December, 1929, the county auditor of Richland County certified to the county treasurer that "taxes to be levied for school purposes in the District amounted to $56,606.46;" that according to the resolution adopted by the board in 1930 the levy was ordered for the proportionate share of previous indebtedness and, in addition thereto, amounts necessary for the current expenses of the school, and that all in all, after the deduction of the estimated revenue from cash on hand, tuition, county aid, uncollected taxes and other sources, the board levied $54,900 for general school purposes; and $20,544.10 for excess debts; that in December 1930 the county auditor certified to the county treasurer a tax levy for the School District of $44,494.63; and that the total amount of taxes which the school district could levy for the year 1929 was approximately $15,-000. The plaintiffs then allege that defendants are paying illegal

debts, are threatening to continue illegal and excessive tax levies and will do so unless enjoined.

The defendants allege that the school district now operates under the general law of the state; that one issue of bonds was sold to the state and the proceeds used to build a school house; that the second issue of bonds was used to take up outstanding warrants that were issued in part payment of this school building; that these bonds were sold to an innocent purchaser who gave to the defendant cash consideration therefor; that the remaining indebtedness said to be in excess was incurred in the years 1918 and 1919 by the school board upon the authority of the people of the school district, in proceedings wherein plaintiffs Jones, Green and Cunningham participated, the remaining plaintiffs accepted, and all of them approved; that the outstanding warrants were issued for salaries, fuel supplies, tuition and upkeep of the school; that by October, 1929, an indebtedness of approximately $70,000 had been incurred which should have been funded by special levies made by school boards prior thereto; that the provisions of the Law of 1923, C. 326 (Comp. Laws Supp. 1925, §§ 2079b1 to 2079b13) in force at that time, required school boards to "go on a cash basis" and authorized a special levy to retire this indebtedness "that said bonds were sold and delivered in good faith and received and paid for in good faith" and the proceeds thereof used for school purposes and if bonds and warrants are declared illegal it is the duty of the school district and the taxpayers to restore this money to those who purchased the bonds and the school warrants.

The intervenors claim that they are the holders of some of the warrants issued in 1926 and 1927 and the same were delivered to them in payment of fuel furnished to the defendants for the purpose of maintaining the school, and in accordance with the authority conferred by law upon the board to contract for such fuel.

The trial court denied an injunction and plaintiffs appeal.

Plaintiffs say no question of fraud arises, that the question involved is the illegality of bonds and warrants issued in excess of the debt limit, "or issued in exchange for other warrants which were in excess" of the debt limit.

The issue on the claim of the intervenors may be disposed of by the mere recital of the fact that these warrants were issued for fuel

purchased from the intervenors during the years cited; were within the power of the school board to issue; the supplies were included in the budget and provided for by the tax levy; and even though prior indebtedness be illegal these warrants can be separated and distinguished.

Respondents claim the plaintiffs are estopped from maintaining this suit because of their conduct. Resident taxpayers, seeking to vindicate the rights of the public generally, are not, under the facts in this case, estopped from doing so even if dilatory in their action. Lang v. Cavalier, 59 N. D. 75, 84, 228 N. W. 819, 822. This is not an action brought by a taxpayer to enjoin the collection of his own taxes because the same or a portion thereof are illegal. This is an action on behalf of the public. Where the plaintiffs are taxpayers in the district they have sufficient interest to justify an action.

Appellants take the position "that the various general school statutes referring to bonds, warrants, levies, etc.," are not applicable to the defendant school district, though it is the contention of the defendants that they do apply, saying:

"It is sufficient to state that these acts do not refer to nor are they made applicable to school districts operating under a special charter."

It appears to be a part of the plaintiffs' theory that all the rights, powers, duties and limitations of the school board are found in this territorial act and are not affected in any way by anything which the state legislature has done, other than by chapter 205 of the Session Laws of 1909.

The territorial legislature in 1885 enacted the special law cited by the plaintiffs in this case; but there is nothing irrevocable about this legislation. Article 2 of the schedule of the state constitution shows that only the territorial laws not repugnant to the constitution "remain in force until they expire by their own limitations or be altered or repealed." There is nothing to prevent the State legislature from amending or repealing any of these territorial laws. In territorial days the "organic law" of the territory was the authority for legislative action; but there is nothing therein which made a special law creating a school district an irrevocable act. The territorial legislature was given general power over "all rightful subjects of legislation not inconsistent with the constitution and laws of the United States;" but there was no specific provision for any educational system.

When the constitution of this State was promulgated it went into effect and "full force immediately upon the admission of the territory as a state." See § 11 of Schedule. It became the duty of the legislature therefore to make provision "for the establishment and maintenance of a system of public schools which shall be open to all children of the State of North Dakota and free from sectarian control."

This provision (§ 147 of the constitution), by its own terms and by the terms of § 4 of the Enabling Act under which this portion of the territory became a state, is made "irrevocable without the consent of the United States and the people of North Dakota."

In obedience to §§ 147 and 148 of the Constitution of this State the legislature of 1890, provided a comprehensive and "uniform system of free public schools throughout the state." See chapter 62 of the Session Laws of 1890, § 35 of this chapter says: "Each civil township in every county in the state, not organized for school purposes under the district system at the taking effect of this act, shall be and is hereby constituted a distinct school corporation, etc."

Even if the legislature did not intend this section to affect Brightwood Independent school district another comprehensive school law was enacted in 1911 (chapter 266 of the Session Laws of 1911) and § 37 of this new law, included in article 3 and designated "Common School Districts," says: "Each and every school district in this State now legally organized or which shall be organized hereafter shall be and is hereby constituted a public corporation to be known and designated as ———— school district No. —— of ———— County, State of North Dakota. : . ."

There is no question but Brightwood Independent school district was then a "school district in this state now legally organized."

Section 177, chapter 266 of the Session Laws of 1911, carried forward into the Code of 1913 as § 1286 makes provision for independent school districts and says: "Any city heretofore organized for school purposes under a special law . . . may become incorporated as an independent school district under the provisions of this article. . . ." Appellants say this does not apply to the defendant because it is limited to cities only and the special law of the territory organizing the defendant school district takes in a city and also some eighteen sections in Richland county.

Appellants say confusion arose in the minds of the defendants and of the trial court because of the use of the word "independent" in the name of this school district; that this word "independent" as used in the title of the school district does not necessarily refer to the class of school districts provided by law and known as "independent school districts."

So far as the question of the right of the taxpayers to increase the debt limit of this school district is concerned such alleged confusion is of no moment.

The people of this state, through the provisions of § 183 of the Constitution amended in 1920, permitted "a school district . . . by a majority vote" to increase its indebtedness "five per centum on such assessed value beyond such five per centum limit. . . ." Such increase was authorized by the district at an election in May 1923, and is ample authority for the school district in question to increase its debt limit unhampered by any provisions of the territorial legislation. Thus the provisions of the territorial law relative to debt limit of this school district do not control.

Plaintiffs say that even if the general law applies to this district the indebtedness whose payment is sought to be enjoined was contracted after the district had exceeded its debt limit.

The presumption is the school officers did their duty, did nothing illegal, and that the bonds and warrants are valid. The burden of proof is upon the plaintiffs to show what portion of this indebtedness is invalid. See Lake County v. Keene Five Cents Sav. Bank (C. C. A. 8th) 108 Fed. 505, 514. It becomes important then to ascertain whether plaintiffs have shown that the indebtedness complained of was illegal in its inception.

The term "indebtedness," as used in § 183 of our constitution as amended, means the amount of debts less collectible taxes and other funds. See Darling v. Taylor, 7 N. D. 538, 75 N. W. 766; Anderson v. International School Dist. 32 N. D. 413, 424, 156 N. W. 57, L.R.A. 1917E, 428, Ann. Cas. 1918A, 506.

Cost of maintenance during the current year, incurred by the board in administration of the district's business in accordance with the law laid down for such purpose, is not included. A district may have an indebtedness equal to ten per cent of its assessed valuation and yet the

board may levy taxes to carry on the current work of the school, provided it keeps within the levy limitations prescribed by law.

Warrants, issued in anticipation of tax levies already made do not augment existing indebtedness. See Darling v. Taylor, and Anderson v. International School Dist. supra; Johnson v. Pawnee County, 7 Okla. 686, 56 Pac. 701; Bryan v. Menefee, 21 Okla. 1, 95 Pac. 471; Re Application of State to Issue Bonds, 33 Okla. 797, 127 Pac. 1065.

That some taxes may not be paid, or the revenue falls below that anticipated does not add to the "indebtedness" as the deficit is a special charge against the income anticipated for that year. If such deficit be included in the indebtedness it is offset by the provided revenue as an asset, leaving the result the same. See Faught v. Sapulpa, 145 Okla. 164, 292 Pac. 15, 25.

The assessed valuation in 1921 was in excess of $1,615,000 with bonds and outstanding warrants of about $99,000. By 1922 and 1923 the assessed valuation was between $1,350,000 and $1,500.000.

By 1926 the assessed valuation had risen to over $1,707,000 and by 1930 had fallen to $1,205,000 with outstanding debts as of 1923.

But though the assessed valuation has declined over $400,000 since 1930, it is the assessed valuation taken at the time the debts are incurred which is the criterion. That the valuation shrinks so that the valid outstanding indebtedness is now beyond the constitutional limitation, does not invalidate any portion of such indebtedness nor discharge the district from the payment thereof. Jones v. Citizens' Bank, 228 Ky. 699, 15 S. W. (2d) 468, 469; Lewis v. Brady, 17 Idaho, 251, 104 Pac. 900, 28 L.R.A.(N.S.) 149 and note; Addyston Pipe & Steel Co. v. Corry, 197 Pa. 41, 46 Atl. 1035, 1036, 80 Am. St. Rep. 812; McQuillin, Mun. Corp. 2d ed. § 2371.

The complaint alleges, the answer admits and the findings of the trial court determine that since 1923, despite a gradual and continuous decline in the assessed valuation of the district, the amount of outstanding indebtedness and outstanding warrants has decreased. According to the complaint the amount of bonded indebtedness has decreased fifty thousand dollars since July 1, 1924, and from July 1, 1923 to July 1, 1931 the outstanding unpaid warrants decreased over thirty-six thousand dollars. How much of this debt was the old debt

in one form or another; how much of the debt alleged to be illegal had been paid; how much of the excess was lawfully incurred; how much of the taxes levied remained unpaid, so that the gradual increase of debt together with the gradual decrease of the assessed valuation have produced a situation where heroic remedies must be used to effect a cure, are not shown.

February 1920 the district voted to issue bonds in the sum of $75,-000 for the building of a new school. These bonds have been paid, with the exception of $25,000. The record shows these were legal.

The board called for bids but the lowest bid exceeded the cost as estimated by the architects. At a mass meeting, attended by some of the plaintiffs and a large number of other persons interested in the erection of the school house the board was encouraged·to go on with the building and the contract was let for about $110,000. In the meantime Mr. Bagg advanced cash from time to time for payments to the contractor according to the estimate furnished. This continued until he had advanced the district $75,000 receiving warrants therefor. After the increase of indebtedness was authorized the district issued bonds in' the sum of $75,000, which were delivered to Mr. Bagg in December of 1923 and January of 1924 in exchange for the warrants given for the cash he furnished. These are the bonds which plaintiffs say are illegal. Certainly they were not without consideration, and in Flagg v. School Dist. 4 N. D. 30, 52, 56, 58 N. W. 499, 25 L.R.A. 363, this court clearly distinguishes between void warrants and bonds in the hands of a bona fide purchaser and those in the hands of original holder.

In 1923 the "outstanding unpaid warrants" amounted to over $103,-000—$75,000 of this being held by F. A. Bagg and exchanged for bonds. The amount in the treasury on the first of July, 1923, was approximately $8,000. The record does not show the amount of uncollected taxes and other sources of revenue for that time to enable us to determine whether the apparent excess was in fact illegal.

We have adverted to the burden of proof and the presumption of legality. Defendants in their brief refer to "a statement compiled from the records of the school district and the county auditor's office and the county treasurer's office as of date December 6, 1923," wherein there is a showing that some $72,000 "should be credited to the

school district before computing the difference between the debt limit and the outstanding obligations, bringing the transaction clearly within the debt limit." We do not find any such statement in the record and therefore can not assume its correctness. Nevertheless, there is nothing in the record which excludes the possibility or probability of such a situation. The plaintiffs have shown that at the time these bonds were issued there were outstanding warrants and bonds which on their face might indicate the debt limit had been reached, yet the plaintiffs should also show not only the outstanding warrants but also the condition of the treasury. This has not been done. As one of the plaintiffs was president of the school board at the time and signed the bonds when issued we naturally assume he did not do an illegal act. Before he shows that he has done an illegal act he should present a complete statement of the financial condition at the time the bonds were issued.

Even if, as plaintiffs contend, the board contracted debts beyond the debt limit, nevertheless during these same years they issued warrants for the current expenses of the school, as required by law. These warrants were commingled. The testimony shows all old debts and obligations, prior to 1929, were paid out of the current funds—no attempt being made to segregate one kind from another—that prior to 1929 "old obligations from former years were carried along from year to year *until they were finally paid.*" If this be so the warrants remaining unpaid are such as could be issued legally, were issued legally, and are not rendered illegal by lapse of time. Even if the board permitted these legal warrants to accumulate by using the levies to pay off warrants which the plaintiffs said could not be issued they should not be enjoined today from paying legal warrants. No tax district should be permitted to anticipate its future general revenue so as not to leave enough for current expense; but if it should do so it does not thus render the warrants for current expenses illegal.

In Anderson v. International School Dist. 32 N. D. 413, 428, 156 N. W. 54, L.R.A.1917E, 428, Ann. Cas. 1918A, 506, this court quotes with approval the opinion of Judge Deemer in Windsor v. Des Moines, 110 Iowa, 175, 81 N. W. 476, 80 Am. St. Rep. 280, wherein it is said: "Suppose a city should anticipate all its general revenues, and thus leave nothing for the payment of current expenses, and sup-

pose, further, that it should issue warrants for the payment of these expenses, which were not paid for want of funds; could not the holder of these warrants enforce them against the city? . . ."

See also Darling v. Taylor, 7 N. D. 538, 75 N. W. 766; supra.

But though there is a failure to prove illegality of the indebtedness at its inception have the plaintiffs shown the levy made is beyond that authorized by law?

Chapter 326 of the Session Laws of 1923, being §§ 2079b1 to 2079b13 of the Supplement, is a general law and this school district may take advantage of its provisions.

Section 10 of this act (§ 2079b10 of the Supplement) says: "It shall be lawful for the governing boards of taxing districts to levy a tax for the purpose of providing funds with which to pay such warrants outstanding July 1st, 1923, as are in excess of the constitutional debt limit, which levy may be made in addition to the maximum rates of levy now or hereafter provided by law, provided such warrants have been issued in good faith and for value received. As such taxes are collected, the county auditor shall segregate the funds derived from such taxes into a separate fund and the same shall be applied by the treasurer of such taxing district, for the purpose of retiring such warrants as are in excess of the constitutional debt limit and for no other purpose."

Because the constitution permits a debt limit up to ten per cent. of the assessed valuation does not prevent the legislature from setting a lower limit. But the legislature may also increase the limit that it sets until it reaches the constitutional limit. Thus it may validate indebtedness already incurred, until the indebtedness reaches ten per cent. of the assessed valuation at the time incurred or, in other words, reaches the constitutional limitation.

The record shows that it was not until 1929 the "governing board of this taxing district" undertook in a systematic method to discharge its pre-existing indebtedness and went on to the "cash basis" required.

The whole tenor of the case indicates that until the action complained of in the case at bar the governing boards of this taxing district made no attempt to levy a tax to pay for the increasing indebtedness. But the law does not prevent the governing board from doing so, and where the previous governing boards have failed to levy a tax there

is nothing to hinder the present board from doing it. The legislative authority has not been withdrawn.

This levy authorized is "in addition to the maximum rates of levy now or hereafter provided by law," and does not augment the "indebtedness."

Under the provisions of § 1182 of the Supplement the governing board of the school district may levy "a tax for school purposes of not exceeding thirty mills on the dollar in any year, provided, however, that in districts having a high school an additional tax of ten mills on the dollar may be levied if a majority of the school voters of such district annually authorize such levy at the annual school election." This levy authorized by the session laws of 1923 is in addition to the amount authorized by § 1182 and there does not seem to be any limit fixed for this additional levy. This levy is authorized in order to take care of the excess indebtedness that had been incurred. The proceeds therefrom can not be used for any other purpose. The law requires this amount be segregated by the county auditor and kept as a separate fund to retire the excess, and for no other purpose. It would appear as if the discretion as to amount of this levy for this purpose is left with the governing board.

If the indebtedness sought to be thus paid did not exceed the constitutional debt limit when incurred then it is valid, and its payment should not be enjoined, if the special levy is not excessive. If the board attempts to divert the proceeds to other purposes those affected have ample remedy.

It is not contended that the defendants are seeking to levy taxes for debts incurred today over the debt limit. It would appear from the record that had the board of 1923 and of subsequent years placed the district upon a cash basis at that time, reviewed the outstanding indebtedness and made provision for its retirement the issues involved would not appear today.

Because a court will refuse to permit recovery on a contract made in excess of the debt limit does not say that the court will enjoin the school district from paying warrants lawfully issued, even though the aggregate of these today should be beyond the debt limit.

The board is charged with the duty of maintaining this school for a period of at least seven months during the year, and with discretion

to increase this period. To maintain the school current expenses must be paid. Teachers must be employed, fuel must be furnished, and other necessary expenses incurred. The plaintiffs seek to enjoin the defendants from levying taxes to meet these current expenses and to pay a part of this past indebtedness incurred. While the school board is charged with the duty of maintaining the school and is authorized to levy taxes within certain limits, to meet the current expenses it must also pay the debts. It must take care of both duties. It is not a stretch of imagination to believe there may be many districts where the population has so decreased and the assessed valuation so shrunk that the amount necessary to pay off an indebtedness would not permit the maintenance of a school if all the anticipated revenue was used to pay debts. On the other hand if all the anticipated revenue was used to maintain such school as the board is required to maintain, the district would be subject to a suit for past due indebtedness.

From the findings—and they are supported by the evidence—it is clear that the indebtedness of today is the inheritance of years past, and such inheritance as it was the duty of the governing board of the taxing district to take care of under the provisions of the laws of 1923 cited.

This court has been firm in protecting the interests of school districts against contracts involving expenditures beyond the debt limit. See Anderson v. International School Dist. 32 N. D. 413, 428, 156 N. W. 54, L.R.A. 1917E, 428, Ann. Cas. 1918A, 506, and Bartelson v. International School Dist. 43 N. D. 253, 256, 174 N. W. 78. In these cases cited the action was prompt, the illegality of the debt clear and the rights of the plaintiffs were equitable.

The record here shows clearly that the plaintiffs, actively and by passive acquiescence, concurred and approved such expenditures. The warrants were issued in good faith for property and services furnished to the school district in maintaining this school—such as fuel, other supplies, wages, furniture, etc.—and taxpayers of this district, including some if not all of the plaintiffs, were among those who furnished this material and received the warrants. Some of the plaintiffs furnished a portion of these supplies, received warrants in large sums therefor, held them for some time, re-imbursed themselves by selling the warrants to friends, and neighbors, and after thus receiving pay

for their supplies furnished the district, now seek to prevent the district from paying the holders. One of the plaintiffs sold land and supplies to the district and received over $10,000 in warrants—none of which are now held by him. He also assisted in the attempt to sell the bonds, making a trip to the Twin Cities for that purpose. All this casts doubt on plaintiffs' position. Surely they would not want to claim the warrants issued to them were void. They must distinguish clearly the illegal from the legal, before they show right to injunctive relief.

When we review all of the record in this case,—the character of the school district; the inception of the debts; the demands of the people of the school district; the active support and acquiescence of the plaintiffs herein; the highly inequitable action of some of them with reference to securing the warrants for themselves, disposing of them to holders who bought from them in good faith, and now their attempt to prevent these from recovering the indebtedness of that day; the evidence showing that a large portion at least, if not all, of the alleged illegal warrants have been paid and therefore the plaintiffs have not distinguished the illegal from the legal; the attempt of the officers to bring the district to a cash basis—we are satisfied the plaintiffs have not made out a case entitling them to the equitable relief sought. The judgment of the lower court is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, BIRDZELL and BURKE, JJ., concur.