**William L. HALLDORSON et al., Plaintiffs/Appellants,**

**v.**

**The STATE SCHOOL CONSTRUCTION FUND, and Walter Christianson, Treasurer of the State of North Dakota, Defendants/Appellees,**

**and**

**Edinburg Public School District # 106, of Walsh, et al., Counties, North Dakota, Intervenor/Appellee.**

**Civ. No. 9026.**

Supreme Court of North Dakota.

Dec. 20, 1974.

Schuster, Ramlo & McGuire, Fargo, for plaintiffs/appellants.

John M. Olson, Sp. Asst. Atty. Gen., for defendants/appellees.

Robert L. Burke, Grafton, for intervenor/appellee.

VOGEL, Judge.

The action which resulted in this appeal was commenced by a group of residents and taxpayers of Edinburg Public School District No. 106, which includes parts of Walsh, Pembina, and Cavalier Counties. They brought the action against the State Board of Public School Education in its capacity as the State School Construction Fund Board and its members. The State Board of Public School Education is a state agency which in its capacity as the State School Construction Fund Board makes loans to school districts for construction purposes pursuant to Chapter 15–60, N.D.C.C. The school district intervened and, by stipulation, adopted as its own pleading the answer of the Fund. No affirmative relief against the school district is sought in the action. The plaintiffs-appellants instead attacked the legality of a loan made by the Board pursuant to Chapter 15–60, N.D.C.C., to the district and sought an injunction against the disbursement of the loan funds by the Board.

We mention at the outset that the language of Section 15–60 is cast in terms of "leases" of newly constructed buildings to school districts by the Fund, but the parties have treated the transaction realistically as a loan from the Fund to the District. So shall we.

After a trial, the district court held that the plaintiffs were not entitled to the relief sought, dismissed the complaint, and dissolved certain preliminary injunctions theretofore issued. We affirm.

The appellants contend that the State Board of Public School Education is an administrative agency within the terms of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., and argue from this premise that the decision of the State Board of Public School Education to make a loan to Edinburg Public School District No. 106 is appealable to the district court, and they further argue that the actions of the Board in making the loan were not in compliance with the Administrative Agencies Practice Act in that no notice or opportunity to be heard was given to interested parties, no adequate record of proceedings was kept, and no findings of fact supporting the conclusions of the agency were made.

The term "administrative agency" is defined in Section 28–32–01, N.D.C.C., as including ". . . any officer, board, commission, bureau, department, or tribunal other than a court, having state-wide jurisdiction and authority to make any order, finding, determination, award, or assessment which has the force and effect of law and which by statute is subject to review in the courts of this state;"

The appellants argue that the Fund is governed by the State Board of Public School Education, Section 15–60–01(6), N.D.C.C., that the Board has the Superintendent of Public Instruction as its executive director, Section 15–21–17, N.D.C.C., that the Board is given state-wide jurisdiction, Section 15–21–17 to 15–21–19, N.D.C.C.; that the superintendent is designated by statute as an administrative agency, Section 15–21–07, N.D.C.C.; and therefore, that the Board is an administrative agency subject to the provisions of Chapter 28–32, N.D.C.C.

We find this argument unconvincing. In the first place, the State Board of Public School Education, a statutory agency of seven members, is a separate body from the Department of Public Instruction and the Superintendent of Public Instruction, who heads the Department of Public Instruction.

The 1953 Legislature, by Chapter 136 of the 1953 Session Laws, established a State School Construction Board and defined its powers. The powers are now codified in Chapter 15–60, N.D.C.C. In 1955, the duties of the State School Construction Board were transferred to the State Board of Public School Education by Chapter 132, Session Laws 1955, Section 21 and by Section 24 of the same chapter the State School Construction Board was abolished.

While the Superintendent of Public Instruction is declared by statute to be an administrative agency [Section 15–21–07, N.D.C.C.], he is only one of the seven members of the State Board of Public School Education [Section 15–21–17, N.D.C.C.]. The Superintendent of Public Instruction has many duties and is a member of approximately ten boards and committees, ex officio and otherwise. The mere fact that he is, as to certain duties of his individual office, declared to be an administrative agency, does not transform into administrative agencies all of the boards, bureaus, and commissions on which he serves.

■ Returning to the language of Section 28–32–01, *supra,* we hold that the State Board of Public School Education, while acting as the "Board" which administers the State School Construction Fund [§ 15–60–01 and § 15–60–03, N.D.C.C.] is not an agency which has authority to make "any order, finding, determination, award, or assessment which has the force and effect of law and which by statute is subject to review in the courts of this state;" it is therefore not an administrative agency.

While it has a state-wide jurisdiction to make loans to school districts, it is not required to establish rules and regulations for that purpose or to give notice and opportunity to be heard to potentially interested parties. Its function is more like that of a lending agency than the type of agencies we heretofore have declared to be administrative agencies. See First American Bank & Trust Co. v. Ellwein, 198 N.W.2d 84 (N.D. 1972); Wagner v. North Dakota Board of Barber Examiners, 186 N.W.2d 570 (N.D. 1971); Medical Properties, Inc. v. North

Dakota Board of Pharmacy, 80 N.W.2d 87 (1956).

We note that we have previously held that the State Board of Public School Education, while acting under authority of a different statute and in a different capacity, was an administrative agency subject to the provisions of Chapter 28–32, N.D.C.C. In re Township 143 North, Range 55 West, Cass County, 183 N.W.2d 520 (N.D.1971).

However, the Board was acting in that case as a state committee for school district reorganization, under statutes (Chapters 15–53 and 15–27, N.D.C.C., since repealed) which provided for a hearing, notice to interested parties, and for an appeal which the statute specified was to be made pursuant to Chapter 28–32, the Administrative Agencies Practice Act.

In the case now before us, the State Board is acting under Chapter 15–60, N.D. C.C., which contains no such provisions for hearing, notice and appeal; and the Board here performs an entirely different function, that of deciding whether to lend State funds. We note that this court, in the case just cited, makes the following statement:

> "Counsel for respondent pointed out in his brief that the State [Board of Public School Education] is not an administrative agency for all purposes, and it was not accustomed to following the requirements of the Administrative Agencies Practice Act, Chapter 28–32, N.D.C.C., which the legislature imposed upon this board in 1963 in the limited situation set forth in Section 15–27–05, N.D.C.C." 183 N.W.2d 520, at 527, *supra.*

█ The functions the Board was executing in the case now before us were imposed upon it by the Legislature in 1955 by Chapter 132 of the Session Laws and do not purport to require compliance with the Administrative Agencies Practice Act. We hold that the provisions of Chapter 28–32 do not apply to the Board when it acts under Chapter 15–60, N.D.C.C.

Another major attack on the making of the loan by the State School Construction Fund is based upon alleged irregularities of the School District in voting an increase in the District's debt limit from five percent to ten percent.

The district voted in 1966 to increase the debt limit from five percent to ten percent, pursuant to Chapter 15–48, N.D.C.C. Section 15–48–04, N.D.C.C., provides that the limit of indebtedness may be increased to ten percent "if a majority of the votes cast upon the question are in favor of increasing the limit of indebtedness of the school district . . . ." It is undisputed that a majority of the voters in the entire district favored the increase. However, the appellants claim that the increase in the debt limit was nevertheless defeated because it did not obtain a majority of all the votes cast by the electors in each of the geographic areas which were combined to make up the reorganized Edinburg Public School District No. 106. Appellants claim that a majority is required in each of such geographic areas under the terms of former Section 15–53–32 (Chapter 175 of the 1963 Session Laws), in effect at the time of the election to increase the debt limit, and subsequently repealed by Chapter 158 of the 1971 Session Laws, Section 29. Former Section 15–53–32, in pertinent part, read as follows:

> "*Changes In Reorganization Plan.*—At any time after the reorganization plan has become effective any provision of the reorganization plan heretofore or hereafter adopted, including those affecting the adjustment of assets and liabilities but excepting those provisions defining the boundaries of the district, may be changed by a majority vote of the electorate without approval of the state or county committees. . . . The new elections shall follow the election procedure provided in section 15–53–14 and shall involve the same geographic areas as were concerned with the original reorganization election. . . . If a majority of all votes cast by the electors

residing in each of said geographic areas are in favor of the proposed change then the proposed change shall be effected."

We conclude that former Section 15–53–32 was inapplicable to a district-wide vote taken after reorganization to increase the debt limit of the district. Such an increase of the debt limit is no part of the reorganization plan, nor is it a modification or change in the reorganization plan. Instead, it is a new and entirely separate decision made by the electorate of the entire reorganized district and is governed by the provisions of Chapter 15–48, *supra.*

The appellants further assert that the State Board acted illegally in approving a loan in an amount greater than ten percent (actually about twelve percent) of the taxable valuation of the district. Section 15–60–04, N.D.C.C., permits the Board to expend for construction or improvements for any district amounts limited to ten percent of its taxable valuation "and under extreme emergency conditions the board may expend fifteen percent of its taxable valuation . . ." The appellants assert that there was no extreme emergency justifying expending more than ten percent of the taxable valuation. The trial court found otherwise, and we agree. There was testimony from a representative of the office of the State Fire Marshal to the effect that the main part of an old school was not fit for occupancy on August 26, 1968, and thereafter, and that continued permission for the use of two rooms was given only because there was no alternative. Where the safety of school children is in question, we believe such evidence is ample support for a finding that an extreme emergency exists.

The appellants next make a very technical argument that the school district, at the time of entry into the contract with the State Board, either had an existing bonded indebtedness less than the maximum limit permitted by law—in which case it was not eligible for a loan under Section 15–60–03, N.D.C.C.—or it had an existing bonded indebtedness in excess of that permitted by law—in which case it was violating the State law and was not eligible for the loan. Of course, it would be a fortuitous accident if the debt limit were precisely equaled by the actual amount of indebtedness. The amount of interest due on the debt varies each day, the assessed valuation of the property within the district varies each year, and the amount of money in sinking funds goes up and down with tax collections and payments of interest and principal. A requirement that the district have, at the moment of execution of the contract precisely, "an existing bonded indebtedness to the maximum limit permitted by law," [§ 15–60–03, N.D.C.C.] would make compliance with the statute impossible. Portia succeeded with such an argument (*Merchant of Venice*, Act IV, scene I), but we deal here with fiscal realities, not pounds of flesh. Our inquiry will be only as to whether the statute is substantially complied with.

The evidence shows that the assessed value of property within the district on November 30, 1972, was $2,286,536, so its maximum indebtedness at the ten percent limitation was $228,865. In November, 1972, the balance due on a bond issue of the district dated in 1959 was $54,000, and the balance due on the 1970 bond issue was $108,000. Sinking fund balances on May 15, 1972, were $11,156.12 and $11,465.29.

If we add the amounts due on the older bond issues, totaling $162,000, to the $71,000 bond issue voted in 1972, we have a total indebtedness of $233,000, slightly in excess of the ten percent debt limitation. However, from this sum may be deducted amounts available for payment of the debt. Jones v. Brightwood Independent School District, 63 N.D. 275, 247 N.W. 884 (1933). Deducting the sinking fund balances mentioned above, leaves a net indebtedness of $211,378.59, which is $17,486.41 less than the ten percent debt limit of $228,865. This is a difference of less than ten percent of the figures as stated. An exact determina-

tion would probably be much nearer the debt limit, because the computation given above fails to make allowance for accruing interest on outstanding bonds up to the date of the contract between the school district and the State fund. We hold that the requirement of § 15–60–03 as to amount of preexisting debt was substantially complied with.

The appellants further assert that the amount of money on hand in the building fund of the school district must be deducted from the indebtedness in any computation such as we have made above. It is conceded that the district had such a fund. In fact, § 15–60–03 requires, as a condition of eligibility, that the district levy the maximum mill levy for the maintenance of the fund. However, there is no statute requiring the application of the building fund to the indebtedness of the district. The authorization for a tax levy for a building fund in the school district is found in Section 57–15–16, N.D.C.C., and provisions for the disposition of the fund in Section 57–15–17, N.D.C.C. The latter statute permits the use of the fund for major repairs to existing buildings or payment of rentals upon contracts with the State School Construction Board, and for return to the General Fund of the district upon the happening of certain contingencies, in addition to potential use for erection of new buildings or additions to old buildings. We hold that the building fund need not be taken into consideration in computing the indebtedness of the school district, since the building fund may be used for other purposes than construction of new buildings, and no part of the fund is available for that purpose until appropriated for that purpose pursuant to § 57–15–17, N.D.C.C.

The appellants contend that the loan made to the district was rendered illegal by the fact that the construction contemplated, and actually made, by the district included a gymnasium, and that construction of gymnasiums is violative of that part of Section 15–60–04 providing "that no money shall be expended for gymnasiums or auditoriums except that in the event an entire school unit is constructed, the auditorium or gymnasium may be considered as part of the total plant and the district may be eligible, provided priority shall first be given the construction and improvements of school units not including an auditorium or gymnasium."

The evidence discloses that the building for which the final loan was obtained includes a gymnasium, science unit, and lunch facility, and that this building is part of a longer-term building program including other new buildings, which were constructed earlier. The school district argues that this building program constitutes the construction of "an entire school unit" and that a gymnasium may therefore be considered as part of the total plan and the district therefore is eligible for the loan. The lower court agreed with this interpretation, although admitting that the interpretation is "broadly made." We agree. We are influenced in this holding by the testimony that the Board has consistently construed the statute to permit such long-term building plans, including gymnasiums, since the inception of the Act, and has made many loans in accordance with that interpretation, without any change in the law by the Legislature. See State v. Gronlie and State v. Heck, 213 N.W.2d 874 (N.D.1974) and Horst v. Guy (second case), 219 N.W.2d 153 (N.D.1974).

Appellants assert that the Board was given false information by the School District on forms supplied by the Board for the purpose of showing justification for the making of the loan. Particularly attacked are statements on the application to the effect that the District might expand in the future by incorporation of parts of other districts adjoining it. There is evidence to show that such prospects are remote, although possible. Representatives of the Board testified that they expected some exaggeration in the district's description of its probable future, and there is no showing

that the Board was influenced in the making of the loan by the misstatements or "puffing," as the district court described them. We agree with the trial court that the inaccuracies do not affect the validity of the loan.

The appellants assert that the loan was made illegal by the fact that the certification of the results of the election to increase the debt limit in 1966 was not made until 1972. However, no tax pursuant to this election was levied prior to the delayed certification, and the delay appears to be due to an oversight. No prejudice was shown by the delay. We hold that the certification was a ministerial act, and delay in filing it was not fatal to the validity of the election.

We have considered on the merits each of the allegations of the appellants that the proceedings of the school district and of the Board were fatally defective to the loan made by the Board. Since we have resolved these questions in favor of the school district and the Board, we have not had to consider the question of the amount of discretion resting in the Board to disregard defects in its procedure or the procedure of the school district. A lending agency, which acts in good faith and without fraudulent intent, is not required at its peril to verify compliance by the borrower with every technical requirement.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and JOHNSON, KNUDSON and PAULSON, JJ., concur.