Robert E. DAHL, on behalf of himself
and all others similarly situated,
Plaintiff and Appellant,

v.

The CITY OF GRAFTON; Warner K.
Taylor, as Mayor of the City of Grafton;
The City Council of said City, consisting
of Werner Horter, Arthur Oihus, Glenn
Gilleshammer, Lynn Moerke, Fred
Stark, B. J. Dusek, M. J. Callahan, Lynn
Thompson, Thomas Kutz, Harvey Skjer-
ven, Richard Larson, and Sharon Mar-
tens; and Earl F. Machart, Auditor of
the City of Grafton; Defendants and
Appellees,

and

Park View Manor, Inc., Intervener
and Appellee.

Civ. No. 9640.

Supreme Court of North Dakota.

Nov. 28, 1979.

As Amended Jan. 2, 1980.

Robert E. Dahl, of Dahl & Greenagel, Grafton, for plaintiff and appellant.

W. T. DePuy, of DePuy, O'Connor & Goulet, Grafton (on brief), for defendants and appellees.

John Hjellum, of Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for intervenor and appellee.

VANDE WALLE, Justice.

This is an appeal by Robert E. Dahl, on behalf of himself and all others similarly situated, from a judgment of the district court entered March 6, 1979, confirming its judgment of September 12, 1978, quashing a writ of certiorari issued July 14, 1978. We affirm.

The Walsh County Housing Authority (hereinafter "WCHA") had submitted an application under the United States Housing Act of 1937, as amended, with the United States Department of Housing and Urban Development (hereinafter "HUD") for a low-cost housing project for the elderly of 80 units plus a community building. In March of 1973, HUD gave approval for a project of 40 units plus a community building. After calling for bids, WCHA accepted Park View Manor, Inc. (hereinafter "Park View"), as its developer for the project. During these proceedings Dahl represented an unsuccessful bidder.

Informal negotiations between WCHA and the City of Grafton prior to 1973 had

led to the availability of City-owned Blocks 23 and 24, Askelson's Addition to the City of Grafton, for use in the project. After HUD authorized 40 units and a community building, and after Park View Manor had been accepted as developer, negotiations between WCHA, Park View, and the City resulted in the adoption of Resolution No. 666 on April 2, 1973. That resolution provided for the conveyance by the City to the developer, Park View, of all of Block 23 and the east 24 feet of Block 24, Askelson's Addition (hereinafter "first parcel"), including vacated streets and alleys, for $8,000 with all special assessments paid. Purchase was to be made within two years, otherwise the offer would be void.

Because the City still desired the project to consist of 80 units, the resolution further provided that the City would also convey to the developer the balance of Block 24 (hereinafter "second parcel") for $12,000 with the special assessments paid. The purchase was to be made within five years, otherwise the offer would be void.[1]

Park View paid the City $8,000 for the first parcel and proceeded with the construction of the 40 units after a deed to the property was issued. Dahl does not challenge this conveyance.

In anticipation of the construction of additional units on the second parcel, Park View, at the time of the original construction, extended sewer and water lines to the second parcel. It also cut and graded a road on the second parcel and stockpiled excess dirt for fill or lawn on that property.

1. The full text of the resolution reads:

"A RESOLUTION MAKING AVAILABLE PROPERTY FOR THE CONSTRUCTION THEREON OF A HOUSING AND URBAN DEVELOPMENT PROJECT.

"WHEREAS, the City Council of the City of Grafton has been informed that the U. S. Department of Housing and Urban Development has granted authority to the Walsh County Housing Authority to cause to be constructed forty housing units in the City of Grafton for rental to the elderly;

"AND WHEREAS, the City of Grafton is the owner of Blocks Twenty-three (23) and Twenty-four (24) in Askelson's Addition to the City of Grafton, Walsh County, North Dakota; which said parcels are suitable for the erection thereon of said housing units together with appurtenant facilities;

"AND WHEREAS, the City of Grafton has determined to vacate the alleys located in said Blocks and further to vacate Burgamott Avenue between said Blocks;

"AND WHEREAS, it is in the public welfare that so much of said parcels as is necessary be made available to the developer of the contemplated project.

"NOW THEREFORE, BE IT RESOLVED that the City of Grafton, North Dakota, hereby undertakes and agrees with the Walsh County Housing Authority that said City of Grafton will convey to the developer designated by the said Walsh County Housing Authority the following described premises situate in the County of Walsh and State of North Dakota, to-wit:

[LEGAL DESCRIPTION OF "FIRST PARCEL"];

for the sum of Eight Thousand Dollars ($8,000.00) with the special assessments paid upon said above described premises;

"FURTHER RESOLVED, that said City of Grafton, North Dakota, further undertakes and agrees to convey unto the said designated developer the following described premises situate in the County of Walsh and State of North Dakota, to-wit:

[LEGAL DESCRIPTION OF "SECOND PARCEL"];

for the sum of Twelve Thousand Dollars ($12,-000.00) with the special assessments paid upon said last above described premises;

"PROVIDED HOWEVER, that if said parcel first herein described is not purchased within two (2) years of the date hereof, or if said parcel second herein described is not purchased within five (5) years of the date hereof then said offers to sell said parcels shall become null and void at the times herein above stated.

"BE IT FURTHER RESOLVED, that upon the completion of said forty housing units the first year taxes levied per unit shall be the sum of Sixty Dollars ($60.00) per unit.

\* \* \* \* \* \*

"CERTIFICATE

\* \* \* \* \* \*

[CORPORATE SEAL, CITY OF GRAFTON] "I, EARL F. MACHART, the undersigned, City Auditor of the City of Grafton, Walsh County, North Dakota, do certify that the foregoing is a true and correct copy of Resolution No. 666 as duly adopted by the City Council of said City of Grafton on the 2nd day of April, 1973, and as of record and on file in my office.

"[SIGNED] EARL F. MACHART"

HUD authorized the construction of 16 additional units in 1978, and Park View exercised its rights under Resolution 666 to purchase the second parcel. Park View paid the price set in the resolution plus an additional $6,000 to compensate the City for special assessments it had paid on the property since the adoption of the resolution in 1973. This property was conveyed to Park View on July 12, 1978.

On the day of the conveyance, Dahl executed his affidavit for a writ of certiorari on behalf of himself and a class, alleging that the City of Grafton was without jurisdiction to sell the second parcel of land.[2]

This writ was granted by the district court. Soon afterward, Park View was allowed to intervene in the matter.

After the cause was submitted to the district court, it found that Dahl should be barred from relief by way of certiorari because of laches on his part, and ordered the writ of certiorari to be quashed. Because the writ was quashed, the court held that Dahl was not entitled to pursue his request that the proceeding be denominated a class action and denied that request, too.

Dahl moved for a new trial, and the district court granted his motion. After receiving further evidence, the district court confirmed its previous judgment quashing the writ of certiorari. Dahl appeals from this judgment.

On this appeal, concerning the power of the City to sell property under the circumstances of this case, we consider the following issues:

1. Is a class action barred by laches?

2. Did the City have the power to grant an option for the purchase of the property?

3. Did the City meet the requirements of Section 40–11–04, N.D.C.C., in the sale of the property, and, if not,

4. Was the City required to abide by Section 40–11–04, N.D.C.C., in this transaction?

We first consider whether or not a class-action suit may be barred because of laches on the part of one of the class members. It was the holding of the district court that Dahl had known about the resolution concerning the property conveyances since the date of its passage in 1973 and had full opportunity to establish his rights before the parties involved had changed their positions. In addition to representing an unsuccessful bidder on the project in 1973, Dahl was also mayor of Grafton from 1974 until 1978 but was not mayor at the time the second parcel was conveyed. During his tenure as mayor, the validity of Resolution No. 666 was discussed and considered by the Grafton City Council. Despite his knowledge, Dahl delayed instituting proceedings so that granting him the relief asked for in his application for certiorari would, in the district court's opinion, seriously impair the intervening rights of the others involved. We agree with the district court in holding that Dahl should be denied relief because of laches on his part. But because the writ was sought by Dahl on behalf of himself and all other residents and taxpayers of the city of Grafton, we hold the district court erred in barring relief to all other members of the class because of Dahl's inaction.

The rationale behind refusal to apply the doctrine of laches in class-action suits was well stated in *Storey v. Murphy,* 9 N.D. 115, 123, 81 N.W. 23, 27 (1899):

"Nor (if this action should be dismissed without a decision upon the merits, and on account of the laches of this plaintiff) are we able to see any reason why another action for the same relief might not be instituted by some taxpayer and resident who has not been guilty of laches in the premises. If this be true, it would certainly not be in furtherance of justice to dismiss the present action without determining the merits."

See *Jones v. Brightwood Independent School Dist. No. 1,* 63 N.D. 275, 247 N.W. 884 (1933); *Lang v. City of Cavalier,* 59 N.D. 75, 228 N.W. 819 (1930).

2. A writ of certiorari was the correct judicial remedy for Dahl to seek in challenging the power and authority of the City to act in a certain manner. See Ch. 32–33, N.D.C.C.

We reach no decision today as to whether or not the district court should have certified this proceeding as a class action. This is a determination for the district court. We hold only that if the district court were to determine the action to be a class action, laches would not bar the proceeding.

■ Having reached this conclusion, we could remand to the district court for further proceedings; but because the remaining issues are legal issues we will not remand, but will, in the interest of justice and judicial economy, consider them at this time.

■ We first consider whether the City had the power to grant an option on the sale of real property. Dahl contends that the City does not have this power. In support of his contention he cites *City of Tuskegee v. Sharpe,* 292 Ala. 14, 288 So.2d 122 (1973), in which the Alabama Supreme Court concluded that the power granted a municipal corporation by the Legislature to dispose of real property does not include the power to grant buyers an option on the purchase of real property. We do not find the reasoning of this case persuasive.

The decision in *Sharpe, supra,* was based upon an interpretation of Ala.Code Tit. 37, Sec. 477(1),[3] which provided:

"The governing body of any city or town in this state may, by ordinance to be entered on its minutes, direct the disposal of any real property, not needed for public or municipal purposes, and direct the mayor to make title thereto; and a conveyance made by the mayor in accordance with such ordinance invests the grantee with the title of the municipality."

The North Dakota counterpart to this statute is contained in Section 40–05–01(56), N.D.C.C., which provides that the governing body of a municipality shall have the power to:

"56. Transfer property. To convey, sell, dispose of, or lease personal and real property of the municipality as provided by this title."

We find this section to be not so limited as the Alabama statute but, rather, broad enough to give the City the power to grant an option on the purchase of real property. The power to grant an option to purchase real property is such that it can be implied from the power given a municipality under Section 40–05–01(56), N.D.C.C., to convey, sell, dispose of, or lease real property.

■ Because this project was a joint undertaking of the WCHA and the City of Grafton, we must also consider the effect of N.D.C.C. Section 54–40–08 upon the power of the City to grant options. This section, at the time this action arose, provided:

"Any municipality, county, park district, school district, or other political subdivision of this state upon approval of its respective governing body may enter into agreements with one another for joint or cooperative action, on a cost-sharing basis, or otherwise, to carry out any function or duty which may be authorized by law or assigned to one or more of them, and to expend funds of such municipality, county, park district, school district, or other political subdivision pursuant to such agreement, to use unexpended balances of their respective current funds, *to enter into lease-option to buy and contract for deed agreements between themselves and with private parties,* and to accumulate funds from year to year for the provision of services and facilities, and to otherwise share or contribute property in accordance with such agreement in jointly and cooperatively carrying out such function or duty." [Italics added.]

Walsh County, through its Housing Authority, and the City of Grafton sought to provide adequate low-cost housing for their elderly. WCHA selected the developer and supervised the project while the City provided the land at an affordable price. This is the type of joint action foreseen in the enactment of Section 54–40–08, N.D.C.C. Even if we were to hold that municipal corporations do not generally have the pow-

---

**3.** That statute is now found at Ala.Code § 11 47 20.

er to grant options (which we do not), we find that under the circumstances in this case the City of Grafton had the power to grant an option on the purchase of real property for use in building low-cost housing.

But, although the City had the power to grant an option on the real property, we still must consider whether or not the City complied with the statutory requirements of Section 40–11–04, N.D.C.C., in transferring that property. *Murphy v. City of Bismarck,* 109 N.W.2d 635 (N.D.1961).

▮ Dahl contends that the two conveyances were separate transactions. If this were true, the conveyance of the second parcel in 1978 would be governed by Section 40–11–04, N.D.C.C., as amended in 1975,[4] and Section 40–11–04.1,[5] which was adopted in 1975 and amended in 1977. We do not agree with this contention. Both options were created in the same resolution that was adopted in 1973.[6] WCHA intended to eventually provide 80 units of low-cost housing for the elderly, but because HUD initially approved only a 40-unit project, the resolution was worded in such a manner that the balance of the property would be transferred when Federal approval for more units was granted. Because the approval for both transfers was given by the City in 1973, we consider only the statutory requirements as they existed at that time, and not the later amendments or additions. In 1973, Section 40–11–04, N.D.C.C., provided:

"Every municipality shall enact an ordinance providing a uniform method and procedure for the conveyance, sale, lease or disposal of personal and real property of the municipality."

The City did not have an ordinance at that time providing for a uniform method and procedure in the conveyance of real property. Thus the City failed to comply with the requirements of Section 40–11–04, N.D.C.C. Even though it had the power to transfer property, it did not exercise that power in the manner required by Section 40–11–04.

Although the City should have enacted an ordinance complying with the statute, the failure of the City to enact an ordinance by the time the 1973 resolution was adopted does not void the transfer of the second parcel. Section 23–11–33, N.D.C.C., at that time, provided:[7]

"Any city, county, or other public body shall have the right and power to cooperate with housing authorities, or with the federal government, with respect to the development or administration of projects to assure the availability of safe and sanitary dwellings for persons engaged in national-defense activities and veterans of World War I and veterans of World War II which such city, county, or other public body has for the purpose of assisting the development or administration of slum clearance or housing projects for such persons."

---

4. Section 40–11–04, N.D.C.C., as amended, provides:

"Every municipality shall enact an ordinance providing a uniform method and procedure for the conveyance, sale, lease, or disposal of personal and real property of the municipality. When the property to be disposed of is estimated by the governing body of the municipality to be of a value of less than two thousand five hundred dollars, such property may be sold at private sale upon the proper resolution of the governing body. In all other cases, such property may be sold only at public sale."

5. Section 40–11–04.1, N.D.C.C., provides:

"Upon resolution by the governing body of a city authorizing the public sale of real property, a notice containing a description of the property to be sold and designating the place where and the day and hour when the sale will be held

shall be published in the city's official newspaper as provided in section 40–01–09 once each week for two consecutive weeks with the last publication being at least ten days in advance of the date set for the sale. The notice shall specify whether the bids are to be received at auction or as sealed bids as determined by the governing body of the city. The property advertised shall be sold to the highest bidder if his bid is deemed sufficient by a majority of the members of the governing body."

6. See fn. 1, *supra.*

7. This section was amended in 1977. 1977 N.D. Sess.Laws Ch. 225, § 3. However, this amendment is not pertinent to the present action.

It is true that the project undertaken by the City and the WCHA does not involve national defense activities or veterans, as permitted by the above statute. But, as noted in *Ferch v. Housing Authority of Cass County,* 79 N.D. 764, 795–796, 59 N.W.2d 849, 869 (1953):

> "Such cooperation, however, is implied and certainly can be exercised in as far as the general powers granted the city cover .the matters upon which cooperation is desired."

■ This is not to say that the law on housing authorities creates any new or independent powers on the part of municipal corporations. Cooperation agreements still must be limited to the performance of functions falling within the framework of the powers already possessed by the municipality under other statutes. *Fradet v. City of Southwest Fargo,* 79 N.D. 799, 59 N.W.2d 871 (N.D.1953). But, as we stated previously, the granting of options and the transferring of real property are general powers already possessed by the City.

■ The City was cooperating with the WCHA by making property available for use in building low-cost housing for the elderly. The resolution in question even stated that the City undertook and agreed with the WCHA to convey the property to the developer. This was a sale to a private corporation not only for its benefit but also for the benefit of all Walsh County residents. Furthermore, Section 54–40–08, N.D.C.C., which we have previously discussed, provides the manner for transferring the property. This is the only way the City could effectively cooperate in building low-cost housing for the elderly. If, as Dahl argues, the 1975 law is applicable, a public sale would be required; the property would have to be sold to the highest bidder and no special consideration could be given another governmental unit in providing for the public welfare and in furtherance of a proper governmental function. See *Ferch v. Housing Authority of Cass County, su-*

*pra.* Under these circumstances the City was not required, in exercising its powers, to comply with Section 40–11–04, N.D.C.C., because the City was exercising its powers in compliance with Sections 23–11–33 and 54–40–08, N.D.C.C.[8]

We hold that the City did not exceed its authority when it adopted Resolution No. 666, providing for an option, which was later exercised, on the sale of the second parcel. We therefore affirm the judgment of the district court.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

8. Although we have concluded that the transfer made here is not governed by Section 40–11–04, N.D.C.C., it would be preferable to include in a city ordinance complying with Section 40–11–04 a provision relating to property transfers between governmental units.